### ARTHUR W. GUILFORD *vs.* JAMES MASON.

#### PROVIDENCE—FEBRUARY 20, 1901.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Contracts. Tender.*

A. agreed with B. that he would at any time between the date of the agreement and a day certain, upon payment to him of a specified sum of money, transfer to B. 4,000 shares of stock. B. paid A. $100 for the option. B. attempted repeatedly to find A. prior to the expiration of the option, but was unable to do so. At one time he had with him a check for a portion of the sum and the balance in money. At another time he had certified checks for the entire amount. After the expiration of the option A. refused to convey the stock. At the trial B. was nonsuited on the ground that he did not show that he was at any time prepared to make a legal tender of the amount called for :—

*Held*, that the strict rule of tender did not apply to such a contract, no particular time or place having been fixed for its performance.

The contract contained mutual and dependent promises which were to be performed concurrently, requiring only the readiness and ability on the part of one of the parties to perform, provided the other would do concurrently the thing required, and a notice by the former of such readiness. In the case at bar the facts showed a readiness and ability to perform on the part of B. and what was equivalent to neglect to perform by A.

Distinguishing *Lawrence* v. *Staigg*, 10 R. I. 581.

ASSUMPSIT. The facts are stated in full in the opinion. Heard on petition of plaintiff for a new trial, and new trial granted.

TILLINGHAST, J. This is assumpsit on the following agreement to convey stock :

"This agreement, made this thirty-first day of March, A. D. 1900, witnesseth :

"That James Mason, of Providence, Rhode Island, agrees to and with Arthur W. Guilford, of said Providence, that he will at any time between the date hereof and April 10, 1900, upon payment to him of the sum of eight thousand (8,000) dollars, transfer and deliver by proper papers of transfer four thousand (4,000) shares of the capital stock of the Inter-State Petroleum Company ; the consideration for this option is one hundred (100) dollars, the receipt of which is hereby acknowledged by said Mason from said Guilford, which sum shall be kept and retained by said Mason as full payment for this option in case that the contract for the sale of stock is not consummated.

"It is nevertheless agreed that if the sale of said stock is consummated according to the terms above mentioned, that then the said sum of one hundred (100) dollars shall be applied to the payment of said sum of eight thousand (8,000) dollars, leaving a balance of seven thousand nine hundred (7,900) dollars.

"It is further agreed as a part of the consideration for the price to be paid for said stock, that when the sale of said stock is completed according to the terms as above stated, then the said Mason shall thereupon execute a general release for all claims and demands which he has, or may have, either at law or in equity against the Inter-State Petroleum Company, or any of its officers or agents, arising from the sale of the above-mentioned stock to said Mason.

"(Signed)    JAMES MASON,
"Witness :                         "ARTHUR W. GUILFORD.
"IRVING CHAMPLIN."

At the trial of the case in the Common Pleas Division, the plaintiff testified that after making the contract he immediately made provision to pay the money called for thereby; that on Thursday of the week following the making thereof he went in search of the defendant to tender him the money, but couldn't find him; that he went to his house, but he was not at home; that he was told by the lady who came to the door that defendant was in town and would probably return some time in the evening; that plaintiff told her ·he would endeavor to see Mr. Mason the next day; that he went again to defendant's house the next day, and was then informed that he was out of town and would not return until the next week; that on the following Monday plaintiff solicited the attention of his attorney to the matter and asked him to accompany plaintiff to defendant's house to find him, which he did, but that the house was closed, and everybody, to all appearances, was away; that plaintiff then called at the office of defendant's attorney, Mr. Champlin, to see if he could give him any information as to defendant's whereabouts, but that he was out of town. He also made inquiry at Mr. Champlin's office of the lady there in charge if any person was there who could receive the money in behalf of Mr. Mason, and was informed that there was not, that they were all away and would not return until the following week.

On the plaintiff's return from defendant's residence, he wrote and posted a letter to him which was as follows:

"PROVIDENCE, R. I., April 6, 1900.

"*Mr. James Mason, Providence, R. I.*

"DEAR SIR:—I have called twice at your home, on the 5th and 6th insts., for the purpose of getting the stock which you have agreed to deliver.. On my last call I was informed by the lady who met me at the door that you were out of town and would not return until next week. I take this opportunity to notify you that unless you meet me·before April 10th at such time and place that you may appoint, prepared to

carry out your contract, I shall hold you liable for loss and damage I may sustain.

"Yours truly,

"ARTHUR W. GUILFORD."

On April 9 a letter was written to defendant's attorney which was as follows :

"PROVIDENCE, R. I., April 9th, 1900.

"*Mr. Irving Champlin.*

"DEAR SIR :—Concerning my client Mr. Guilford's contract to buy from your client, Mr. Mason, the stock of the Inter-State Petroleum Company, I desire to say that in company with Mr. Guilford we have called at your office to-day with the funds, prepared to carry out our part of the contract.

" We were unable to find any one at your office in charge of this business.

" We have also been to the house of Mr. Mason and were unable to gain admission.

"I would also state that Mr. Guilford has called at Mr. Mason's house on two previous occasions for this very purpose.

" Under the contract, I think the option expires to-day, but to treat you perfectly fair in the matter, we will hold ourselves ready to pay you for the stock at any time to-morrow, the 10th, and will tender you the funds in payment for the same at any reasonable place you may appoint.

"A copy of this letter has also been sent to Mr. Mason.

"Yours very truly,

"F. W. TILLINGHAST."

A copy of this letter was sent to defendant on the same day.

Plaintiff testified that he duly paid defendant the $100 for the option in accordance with said agreement, and from the time he took the option until the expiration thereof he did his best to find the defendant, but was unable to do so.

He further testified that when he went to defendant's house on the 5th of April, he had with him a check for $4,000 and

the balance of the agreed price of the stock in money.   On the 9th of April plaintiff went again to defendant's house with certified checks for the amount called for by the agreement—$8,000—but failed to find Mr. Mason at home.   Plaintiff had these checks and was ready to deliver them on the 10th and also on the 11th of April.   By his letter of April 9th he tried to get defendant to fix a time and place where the contract could be consummated, but no attention was paid to it.   In short, the evidence shows that the plaintiff was ready, willing, and anxious to perform his part of said agreement by paying said sum of $8,000 for the stock, from the 5th of April down to the time when the option expired, and that he used every reasonable effort during that time to find the defendant, so that the agreement of sale might be consummated.   After the expiration of the ten days the defendant refused to convey the stock and returned the check for the one hundred dollars which had been given to him by the plaintiff for the option, the latter act showing that the defendant did not consider plaintiff in default in the premises, as the contract provided that said sum should be kept and retained by the defendant as full payment for the option in case the contract was not consummated.

(1)     The only question of law which is presented is whether, in view of the facts stated, the ruling of the Common Pleas Division in granting a nonsuit was correct.   The ground upon which the nonsuit was granted was that the plaintiff did not show that he was at any time prepared to make a legal tender to defendant of the amount called for by the agreement.   The plaintiff does not claim that at any of the times when he went to defendant's house to obtain the performance of said agreement on the part of defendant, or at the times when he went to the office of defendant's attorney, he was prepared to make a strict legal tender of the amount called for by the agreement, but simply that he was ready and willing to pay said amount.   And his contention is that this was sufficient, on the ground that where there are concurrent acts to be performed by each party to a contract, as was the case here, all that is necessary for the plaintiff to show in order to entitle

him to recover is that he was ready and willing to perform his part of the agreement.

If the case is to be determined by the strict legal rules of tender, which gives a right of action to a party only upon the actual performance of the thing agreed to be done by *him*, irrespective of the readiness of the other to do the part devolved upon *him*, the plaintiff shows no case. For where a right is dependent upon the payment of money, the general rule is that no action can be maintained to enforce such right without proof of a tender of the money, which must be such money as may be legally offered in payment of a debt. But we are of the opinion that the strict rule of tender does not apply to a contract like the one in suit. This contract contains mutual and dependent promises between the parties which were to be performed by them concurrently, and, therefore, practically at the same time. The plaintiff agreed that he would pay the defendant $8,000 for the stock, and the defendant agreed that upon payment of this amount he would transfer and deliver said stock to him. These acts were to be performed concurrently. The plaintiff had no right to the actual transfer of the stock before he should pay his money, and the defendant had no right to the money before he should deliver the stock. The two things were interdependent and, in the eye of the law, to be performed simultaneously. And it would be a too strict and harsh construction of such a contract, no particular time or place having been fixed for its performance, to hold that a technical common-law tender was necessary in order to save the rights of the plaintiff. *Duchemin* v. *Kendall*, 149 Mass. 171.

We recognize the rule that if either party would charge the other upon an agreement like the one before us, he must put him in default; that is, he must show a refusal by the other party to perform, or some act or neglect on his part which may be regarded as equivalent to a refusal—*Hapgood* v. *Shaw*, 105 Mass. 276—and he must show a readiness and ability to perform on his own part.

We think the evidence offered by the plaintiff *prima facie* showed both of these things. It showed that the defendant

could not be found, although diligent search was made for him, and it is certainly fair to infer that he purposely kept out of the reach of the plaintiff ; and it also showed a readiness and ability on the part of the plaintiff to perform his part of the contract. No particular place or time for the carrying out of the agreement was mentioned therein, and the plaintiff, in order to put the defendant in default, was therefore obliged to endeavor to find him. But that he was obliged to carry around with him the sum of $8,000 in legal tender, or to go to any particular place at any particular time with that sum in his possession in order to put the defendant in default, we do not agree. We do not think that such a purely technical construction of the contract is called for by any rule of law. See *Rawson* v. *Johnson*, 1 East. 203.

In *Smith* v. *Lewis*, 26 Conn. p. 119, Storrs, C. J., says : "Some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case of mutual and concurrent promises. The word 'tender,' as used in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it and nothing further remains to be done, but the transaction is completed and ended ; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed constitute and imply an offer or tender in the sense in which those terms are used in reference to the kind of agreements which we are now considering. It is not an absolute, unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement."

It is doubtless true that if, upon being found, the defendant had insisted upon being paid for the stock in legal tender, he would have had the right to so insist, and the plaintiff would have been obliged to obtain it, which he could readily have done.

In *Brown* v. *Davis*, 138 Mass. 458, substantially the same doctrine is announced. The defendant in that case, as executor of the estate of one Rowe, had agreed to sell, and the plaintiff had agreed to buy, certain real estate, the same to be conveyed by a good and sufficient deed, so as to give a title free from all incumbrances. The plaintiff was to pay to defendant the amount agreed upon in four months from February 3, 1882. He made arrangements for a loan of the money necessary to enable him to perform his part of the contract in this way, namely : One Richards agreed to loan him the necessary amount, provided the defendant could give the plaintiff a good title to the land. Plaintiff took possession of the premises under the contract, and made repairs and additions thereon. Before the expiration of the four months the plaintiff told defendant that he could get the necessary amount from Richards if defendant could give a good title to the land. The defendant did not obtain a license from the Probate Court to sell the property until October 3, 1882, which was long after the expiration of said four months. He then sold it at public auction to one Shedd. Plaintiff admitted that no formal tender was made, and that he had no money with him to pay for the land. The court below ruled that, to maintain the action under the contract, the plaintiff must have made a legal tender within said four months ; and that the plaintiff was not excused therefrom because the defendant was not in a position at any time during said period to fulfill his part of the contract, and directed a verdict for the defendant. Although the court above overruled the plaintiff's exceptions and sustained the verdict, it did so upon a different ground from that taken by the trial court. Allen, J., in delivering the opinion, says :

" The delivery of the deed and the payment of the money were to be concurrent acts. It is true that the defendant did

not do what was necessary to enable himself to give a good title within four months. But he did nothing to disable himself from performance. He merely omitted to prepare himself. He remained inactive. This did not relieve the plaintiff from the duty of making an offer to perform on his part. There was no time when the plaintiff had prepared himself to perform presently his part of the contract. Neither party took sufficient steps to hold the other. It is no doubt true that an actual tender of the money by the plaintiff was not necessary; but he must show that he was ready, willing, and able to do his part, and that the defendant had notice thereof. Nothing short of this would put the defendant in legal default. The maxim that the law does not compel one to do vain or useless things does not apply to a case like this. Here both parties remained inactive in the eye of the law. What the plaintiff did by way of arranging for the money was merely preliminary, and was quite insufficient to give him a right of action." *Linton* v. *Allen*, 154 Mass. 439, recognizes the correctness of the law as thus stated. In *Tinney* v. *Ashley*, 15 Pick. 546, it was held that "Where concurrent acts are to be performed by the parties at the same time, the party suing for damages for the non-performance by the other party is only required to aver that he was ready and willing to perform the agreement on his part, and that the defendant was requested to perform the agreement on his part, but refused so to do." It was further held that "When one party demands of the other the performance of a mutual agreement, by which concurrent acts are to be performed by each party, an offer on the part of the party making the demand to perform his part of the agreement is implied and understood; and when the other party refuses to comply he thereby dispenses with any other offer. And where he neglects to comply, without offering any reason for his non-compliance, the legal effect is the same." In *Smith* v. *B. & M. Ry.*, 6 Allen, 273, the court say: "Where the defendants have neglected or refused to perform the contract on request, it is not necessary for the plaintiff to aver, in pleading, an offer to perform on his part. The averment of readiness and request is sufficient. But the

reason given for this is, that when one party demands of the other the performance of a mutual agreement by which concurrent acts are to be performed by each party, an offer on the part of the party making the demand to perform his part of the agreement is implied and understood; and when the other party refuses to comply, he thereby dispenses with any offer. And when he neglects to comply without assigning any reason for his non-compliance, the effect is the same." See also *Dana* v. *King*, 2 Pick. 156; *Adams* v. *Clark*, 9 Cush. 215.

The case of *Lawrence* v. *Staigg*, 10 R. I. 581, relied on by defendant, is clearly distinguishable from the case at bar. In that case there was nothing for the defendant to do but receive the money to which, by decree of the court, he had been adjudged to be entitled for the surplus of the land in question. The act required to be done by the defendant, as held by the court, was "not part of a contract." There was "no condition, either precedent or subsequent, of a contract." It was an act prescribed by a court of equity which gave the defendant the opportunity to do exact justice to the plaintiff, and if he performed it the court directed that the estate which had vested in him under the deed should not be disturbed. And while the option given to defendant by the decree was held to be not strictly a debt, yet, it being a privilege to retain the estate in controversy, the court held that payment therefor could not be made in a medium which would be insufficient for the payment of a debt.

We are, therefore, of the opinion that the nonsuit was improperly granted.

Petition for new trial granted.

*Tillinghast & Murdock*, for plaintiff.
*Edwards & Angell*, for defendant.