**John G. KOTTIS et al.**

v.

**Benedetto A. CERILLI, Jr., et al.**

**No. 85–398 Appeal.**

Supreme Court of Rhode Island.

June 3, 1987.

Robert Fine, Licht & Semonoff, Providence, for plaintiffs.

Milton Stanzler, Jonathan Stanzler, Abedon, Michaelson, Stanzler & Biener, Providence, for defendants.

OPINION

SHEA, Justice.

This case comes before us on the plaintiffs' appeal of the granting of a directed verdict following the close of their case. The defendants had entered into an agreement with the plaintiffs under which they were to purchase the plaintiffs' stock. The trial justice directed a verdict for the defendants in this breach-of-contract action finding that, even assuming for purposes

of the motion that the defendants were in breach, the plaintiffs failed to prove that they were ready, willing, and able to close on the date set for closing. We reverse.

At the time of the alleged breach of contract, plaintiffs' were four of the eight shareholders of Camelot Gardens, Inc. (Camelot). Camelot owned real estate in Newport, Rhode Island, commonly known as Hammersmith Farm, and operated a museum and gift shop there. The plaintiffs each held 1,000 shares of Camelot and thereby each held 10 percent of the outstanding corporate stock. Each plaintiff also shared equal rights with the other seven stockholders to an additional 2,000 shares.[1] As a group, therefore, plaintiffs held, or had rights to, 50 percent of the outstanding stock.

The plaintiffs bring their complaint in two counts. Although verdicts were directed for defendants on both counts, plaintiffs do not contest the direction for all three defendants on count 2. Consequently, we address only count 1 that involves defendant Thomas L. DeFelice. Count 1 alleges that plaintiffs entered into an agreement with DeFelice on December 11, 1979. Pursuant to the agreement, DeFelice was to purchase all the Camelot stock held by plaintiffs for $1,360,000 on December 28, 1979. Each plaintiff would receive $340,000 as consideration for his 1,000 shares. On the date set for the closing, DeFelice was unable to close because of lack of funds and thereby breached the agreement. Finally, the complaint alleges that as a result of the breach, plaintiffs, desiring to sell their stock, were forced to sell their stock back to Camelot for significantly less than the price offered by defendants.

The December 11, 1979 agreement was introduced at trial and provided that "the sellers shall transfer to the Buyer all of their outstanding shares of stock in Camelot Gardens, Inc. for a payment of $28,000.00 (twenty-eight thousand dollars), together with a promissory note from the Buyer in the face amount of one million three hundred and twenty thousand ($1,320,000.00) dollars." The agreement also provided that on the date of closing, plaintiffs would deliver numerous specified documents to DeFelice.

Testimony at trial revealed that plaintiffs arrived at DeFelice's office on the day of closing but that DeFelice said he did not have the money and could not afford to close that day. The plaintiffs testified that plaintiff John G. Kottis carried the necessary documentation with him to the closing. Since plaintiff Kottis died prior to trial and therefore did not testify, no one could say exactly what documents he had in his possession at the closing.[2] Plaintiff Harry B. Casey testified, however, that plaintiffs were ready and able to close because "every document necessary to close was in Mr. Kottis' possession when we entered Mr. DeFelice's office."

The defendants questioned whether Kottis had copies of Camelot's 1979 financial statements at the closing. Plaintiffs Casey, Paul E. Burke and William J. McManus testified that if Kottis did not have the statements at the closing, they were certain that all financial statements had been delivered or made available to defendants. It was possible, plaintiffs testified, that the 1979 financial statement had not yet been prepared since the closing date was set prior to the end of the year. Plaintiff McManus testified, however, that he believed Kottis had daily or monthly financial sheets for 1979 that would have been made available to DeFelice.

Further testimony revealed that a lis pendens was placed on Hammersmith Farm on December 28, 1979, the same date as the closing, by a former shareholder of Camelot. Plaintiffs Burke and Casey testified that although they were unaware of the lis pendens when they arrived at DeFelice's office for the closing, the possibility of a lawsuit against Camelot by this former shareholder was fully discussed with DeFelice. The plaintiffs testified that they

---

1. Two thousand shares were being held in escrow because of a dispute with former shareholders.

2. On February 25, 1985, Mary G. Kottis, as executrix of the estate of John G. Kottis, was substituted as a plaintiff.

had informed DeFelice that they were prepared to hold him harmless in the event that such a lawsuit materialized.

In granting defendants' motion for directed verdict, the trial justice found that "there was a valid binding contract made" on December 11, 1979, between DeFelice and the four plaintiffs. For purposes of the motion, he accepted the evidence that DeFelice was in breach of contract. He also found, however, that plaintiffs had the burden of proving that they were ready, willing, and able to close on December 28, 1979, and that they had failed to meet that burden. He stated that.

"[t]here is no evidence that all the documents called for by that contract * * * were in the possession of Kottis in proper form and ready to be delivered to DeFelice on that date. It involved more than just having a few documents in one's briefcase. There had to be real estate that was free and clear. There had to be financial statements and so forth. There is no evidence that any of that was ever produced."

When we review the decision of a trial justice on a motion for directed verdict, we are bound by the same rules that govern the trial justice. The evidence must be examined in the light most favorable to the party opposing the motion, in this case plaintiffs, without considering its weight or the credibility of the witnesses. Reasonable inferences that support plaintiffs' argument must be drawn. If such examination reveals any evidence that will support plaintiffs' position or evidence upon which reasonable minds could differ, then the motion should be denied and the jury should be left to determine the facts of the case. *Calenda v. Allstate Insurance Co.*, 518 A.2d 624, 628 (R. I. 1986); *Fiske v. MacGregor, Division of Brunswick*, 464 A.2d 719, 723 (R. I. 1983). With these considerations in mind, we have reviewed the evidence and conclude that the granting of the motion was error.

The evidence in this case, viewed in the light most favorable to plaintiffs, shows that plaintiffs and DeFelice had a valid contract according to which DeFelice was to purchase plaintiffs' shares of Camelot; that the closing was scheduled for December 28, 1979; and that on that date DeFelice breached the contract because he was unable to pay the purchase price. Although plaintiffs could not present direct proof that they were ready, willing, and able to close, neither did DeFelice offer direct evidence that plaintiffs were unprepared for the closing. At the time the directed verdict was granted at the close of plaintiffs' case, the sole reason given for the collapse of the stock purchase on December 28, 1979, was the fact that DeFelice did not have the money to close. Neither plaintiffs nor DeFelice knew of the lis pendens at the time, and the testimony presented claimed that DeFelice was fully aware of the potential lawsuit and that plaintiffs' were willing to hold him harmless. It would be reasonable to assume therefore that any possible future attachment of the property had been worked out between the parties or that DeFelice's knowledge of the potential suit did not affect his decision to purchase plaintiffs' shares. No one claimed at trial that DeFelice refused to close because he was unable to view Camelot's financial statements.

■ The requirement that plaintiffs be ready, willing, and able to perform before bringing suit for breach of the contract is not so strict as to mean that plaintiffs must have physically produced all the documents required of them regardless of the fact that DeFelice had said he was unable to pay.

"[W]hat is essential is that it shall appear to the court and shall have been made clear to the other party to the contract that the exchange agreed upon would be carried out immediately if the latter would do his part. This requirement involves both ability on the part of the plaintiff to perform and an indication of that ability to the other party. The actual production of the money or other thing which the plaintiff is to give is said to be unnecessary." 6 S. Williston, *Contracts* § 833 at 104 (3d ed. Jaeger 1962); Restatement (Second) *Contracts* § 238, comment b (1981).

 Where concurrent acts are to be performed by the parties to a contract, the party bringing suit for breach need only aver that he was ready and willing to perform and that the alleged breacher was requested to perform but refused. *Guilford v. Mason*, 22 R.I. 422, 430, 48 A. 386, 389 (1901). When the party alleging the breach demands the other's performance of the concurrent act, an offer to perform on the part of the alleging party is implied and understood. *Id.* Actual performance by the party alleging the breach is not necessary; rather, notice of his or her readiness to perform constitutes and implies tender. *Id.* at 428, 48 A. at 388; *see Safeway System, Inc. v. Manuel Bros., Inc.*, 102 R.I. 136, 228 A.2d 851 (1967); *Fournier v. Cass*, 49 R.I. 35, 139 A. 655 (1927).

In the case before us, the evidence presented may support a finding that plaintiffs were ready and willing to perform their obligations under the December 11, 1979 agreement. The fact that plaintiffs arrived at the appointed time and place of closing, intending to sell their stock for the price agreed upon and carrying a briefcase alleged to have contained the necessary documentation provides adequate evidence from which to imply sufficient tender. No suggestion was made of DeFelice's dissatisfaction with plaintiffs' tender. Again, the only reason advanced for the failure to consummate the sale of stock was DeFelice's inability to pay on the date of closing. None of the parties to the agreement were aware of the lis pendens at the time of closing, although evidence was presented that the potential for such an attachment had been discussed. Whether its existence would serve to bar the stock transfer or whether such contingency was anticipated and accepted by DeFelice should have been a question left to the jury. At the very least, the evidence before the court at the close of plaintiffs' case may support plaintiffs' claims. Consequently, we must reverse the trial justice's grant of defendants' motion for directed verdict and remand for trial.

The defendants also raise an issue regarding the sufficiency of proof of damages sustained by the plaintiffs. Since a verdict was directed in favor of the defendants, the trial justice did not address the issue of damages below. We do not reach it here since any discussion of damages would be premature at this stage of the proceedings.

For the above-stated reasons, the plaintiffs' appeal is sustained, the judgment appealed from is reversed, and the papers of the case are remanded to the Superior Court for further proceedings.