**228 A.2d 851**

SAFEWAY SYSTEM, INC. *vs.* MANUEL BROS., INC.

APRIL 25, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is a bill in equity by the complainant-vendee to compel specific performance of a contract for the purchase and sale of real estate. A demurrer to the bill was overruled and the cause was then heard on bill, answer and proof. It is here on the appeal of the respondent-vendor from a judgment[1] entered in the superior court conditionally ordering the real estate described in the bill of complaint to be conveyed to the complainant-vendee.

The pertinent facts are not in dispute. It appears that the vendee entered into negotiations for the purchase of a

[1]This case, although commenced and heard in part on the merits prior to January 10, 1966, the effective date of the rules of civil procedure, was not concluded until after that date. The adjustments demanded by the change in the rules explain why the appeal is from a judgment rather than from a decree.

portion of a large tract of land owned by the vendor soon after it learned that the Housing Authority of the city of Newport contemplated acquiring the premises located at 39 Chapel street which were owned and occupied by the vendee in the conduct of its business of warehousing and transporting household goods and effects. Those negotiations culminated on October 13, 1964 in the execution of a buy and sell agreement. In essential part it recited that the vendor would sell and the vendee would purchase a tract of real estate for the sum of $43,000 of which the receipt of $2,000 was acknowledged as a deposit. Transfer of title was to be by a warranty deed conveying a good and marketable title, and the deed was to be delivered and the purchase price paid at 10 o'clock in the morning of October 30, 1964 at the office of the vendee's attorney or at such other time and place as should be mutually agreed upon by the parties. A further stipulation concerned the pending Chapel street acquisition; and the agreement was that the October 30 performance date would be automatically extended for periods of one month each until acquisition of and payment for that property. That stipulation was in turn limited by the further proviso that the time for performance should "not be extended for a period in excess of 6 months from said October 30, 1964 [i.e. beyond April 30, 1965]."

The Chapel street property had not been acquired by October 30, 1964, and apparently the agreement was thereafter automatically extended each month for six successive months. As the April 30, 1965 deadline approached, the parties, apparently aware that the Chapel street acquisition would not take place by that date[2], directly and through

[2]On March 8, 1965 the vendee granted the Housing Authority an option to purchase the property and the Authority gave notification on April 30, 1965 that it was exercising the option. Title passed and the purchase price was paid on June 30, 1965.

counsel communicated for the purpose of fixing a time for the consummation of their agreement; and on April 28, 1965 the vendee's counsel in conversation with the vendor's then counsel attempted to set up a closing date. That arrangements were not completed by April 30 or, indeed, during the following week, was not the vendee's fault. When its repeated attempts to arrange for a time and place for the delivery of the deed and the payment of the agreed purchase price failed, this suit was commenced.

The dispute between the parties arises out of that clause in the agreement which provided for extension of the date of performance. It reads as follows:

"In the event the Newport Housing Authority does not acquire and pay for the Chapel Street real estate presently owned by the purchaser on or before October 30, 1964, then the seller agrees that this Agreement shall be automatically extended for periods of one month each, until said Chapel Street real estate is acquired and paid for by said Newport Housing Authority; provided, however, that this Agreement shall not be extended for a period in excess of 6 months from said October 30, 1964."

I.

The vendee contends, and the trial justice found, that the language of the foregoing clause was clear and unambiguous and that on April 30, 1965 each of the parties was unconditionally obligated to perform its respective agreements notwithstanding that on that date the Housing Authority had not as yet either acquired or paid for the Chapel street property. The judgment directing the vendor to convey the real estate was in substantial measure predicated on that construction.

The vendor, although agreeing that the contract is unambiguous, gives it a different meaning. It argues that performance by each of the parties was contingent upon the Housing Authority acquiring and paying for the Chapel

street property on or before April 30, 1965, and it contends that the failure of either of these conditions to materialize during the contract's lifetime discharged both of the parties from their contractual obligations.

The error with the vendor's position is that it ignores the legal consequences of the vendee's express waiver of those conditions. They obviously were inserted in the agreement for its benefit and their occurrence was just as obviously not of the essence to performance by the vendor of its obligations. Here the vendee, acting through counsel, starting on April 28, 1965, a date within the life of the contract, and continuing for more than a week thereafter, made reasonable attempts to arrange a closing date at which it would have been prepared and able to pay the purchase price and to accept a conveyance from the vendor. By so doing it effectively and unequivocally waived the benefit of those conditions and thereby became as *unconditionally* bound to fulfill its promise under the contract as it would have been had the conditions occurred during the life of the contract. Once the vendee became so obligated, the defense that performance could not be compelled unless the conditions were fulfilled was no longer available. 5A Corbin, Contracts §1194, p. 367; *Catholic Foreign Mission Soc'y v. Oussani,* 215 N. Y. 1, 109 N.E. 80; *Parkhurst v. Maynard,* 285 Mass. 59, 188 N.E. 510.

## II.

Alternatively the vendor concedes that we may find the language of the extension clause doubtful and ambiguous, rather than clear cut, and it argues that the clause by reason of that ambiguity should be interpreted more strongly against its writer, *Connors v. Dagiel,* 88 R. I. 113, *Russolino v. A. F. Rotelli & Sons, Inc.,* 85 R. I. 160, and that in our search for its true meaning we should look to the construction which the parties themselves put upon it. *Coe v. Zwetchkenbaum,* 89 R. I. 358; *Lapan v. Lapan,* 100 R. I.

498, 217 A.2d 242, 245; *Shepard Land Co.* v. *Banigan*, 36
R. I. 1; *Hassett & Hodge* v. *Cooper*, 20 R. I. 585; *Davis* v.
*Manchester*, 17 R. I. 577. It then points to the evidence
that the contract was drafted by the vendee's attorney and
it calls our attention to the testimony of the vendee's presi-
dent. He was the only witness to touch on the question
of the intentions of the parties, and he testified in substance
that his employer had no intention of becoming bound un-
der the contract unless the Housing Authority acquired
and paid for the Chapel street property by April 30, 1965.
Premising its construction of the extension clause on an
application of the rules relied upon to the factual matters
referred to, the vendor's conclusion is that the vendee's
promise to pay was contingent and dependent upon the
occurrence of the conditions precedent and that their non-
fulfillment discharged its obligations.

Even if we take that view of the contract, and there is
much to be said for it, it does not follow that we must also
accept the legal consequences the vendor attaches to the
instrument thus construed. Its legal position is that a lack
of mutuality of remedy makes specific performance an im-
proper remedy and that such a lack exists whenever relief
is not available to *both* contracting parties at all material
times. In this case, the argument continues, the nonfulfill-
ment of the conditions precedent would at any time up to
and including April 30, 1965 have provided the vendee with
a complete defense to a bill for specific performance. In
those circumstances, the argument concludes, specific per-
formance should not have been decreed against a party
who would not have been entitled to equivalent relief
against the other contracting party.

A similar contention was disposed of many years ago in
*Ives* v. *Hazard*, 4 R. I. 14. In that case the seller was the
only signatory to an instrument which recited that "I agree
to sell * * * the Peckham farm * * * for the sum of fifteen

thousand dollars, ($15,000,) payable 25th March, 1853, when possession is to be given." In rejecting the principle that an absence of mutuality of remedy and of contract dictated a denial of specific performance to the purchaser who, because he had not signed the agreement, could not have been compelled either at law or in equity to pay the agreed purchase price, this court said at page 28:

> "It is now well settled by authority, that mutuality of remedy, existing at the time of action brought, is all that is required to enable a plaintiff to maintain his action; and that where there is a bill for specific performance in a court of equity, the bringing of the bill makes the complainant chargeable as on a memorandum of the contract signed by him. This renders the remedy mutual between the parties at the time when the action is commenced."

Under the *Ives* principle, the inability of the vendor in this case to enforce the agreement against the vendee either at law or in equity at the inception of this agreement or indeed at any time prior to the latter's waiver of the conditions was not a ground upon which the court should have predicated a refusal to decree specific performance. Once the vendee brought its bill for specific performance the defense of lack of mutuality of remedy, if such a defense was available, see 2 Restatement, Contracts §372, p. 677, disappeared.[3] *Ives* v. *Hazard, supra; Smart* v. *Boston Wire Stitcher Co.,* 50 R. I. 409, 416.

### III.

The vendor further argues that the vendee's failure to make an actual or formal tender of the purchase price at the time fixed for performance deprived it of standing to invoke equitable relief. Such great strictness in the ap-

---

[3]For cases further illustrating this principle and in which an optionee was allowed specific performance of a contract notwithstanding that the remedy had not been available to the optionor at the time of the execution of the contract, see: *Carpenter* v. *Santurri,* R.I., 108 A. 652; *Collins* v. *Howland,* R.I., 125 A. 209.

plication of the rule of tender, even if required in other circumstances in this jurisdiction, certainly is not demanded in this case. Here the vendor repudiated its obligation under an executory contract prior to the time fixed for performance notwithstanding the vendee's repeated attempts both immediately before and following April 30, 1965 to arrange for a closing date. In such circumstances our rule did not demand a technical common-law tender. It required only "* * * a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do and a notice by the former to the latter of such readiness." *Fournier* v. *Cass*, 49 R. I. 35, 39. See also: *Bicknall & Skinner* v. *Waterman*, 5 R. I. 43, 52; *Hall* v. *Whittier*, 10 R. I. 530, 537; *Lee* v. *Stone*, 21 R. I. 123; *Guilford* v. *Mason*, 22 R. I. 422, 430; *Bergeron* v. *Redfern*, R. I., 108 A. 650; and *Durepo* v. *May*, 73 R. I. 71, 77.

## IV.

The vendor also contends that specific performance should have been denied for the reason that the vendee was not able to perform its undertaking and to consummate the transaction on April 30, 1965. The factual frame for this contention is that the vendee's financing for the purchase was to come from the Newport National Bank. Its commitment to advance the necessary funds was conditioned upon the vendee's receiving a good and marketable title to the subject real estate. That was a condition which was incapable of satisfaction unless the Rhode Island Hospital Trust Company — the mortgagee of record on both a first and a second mortgage covering the entire tract of land owned by the vendor — released or discharged the subject real estate from those mortgages. Duly executed instruments releasing the subject property from those mortgages, although in hand on May 5, 1965 and ready for delivery

upon payment of the amount theretofore agreed upon by the parties, were not available on April 30. In the light of those circumstances the validity of the vendor's argument depends, not on an alleged lack of ability on the part of the vendee to perform, but upon whether time was so of the essence to this agreement that the right to call on equity for assistance should be denied because the funds required to carry out its promise — although available to the vendee on May 5, 1965 — could not have been produced on April 30, 1965.

We need go no further than our own decisions to resolve this issue. An early case, *Ives* v. *Armstrong*, 5 R. I. 567 (1855), concerned performance of a contract to buy and sell real estate. Notwithstanding that the agreement fixed September 1 as the time of execution, no tender or demand was made by the purchaser until September 14. In denying relief the court used the following language at page 594:

> "It is true, mere time is not regarded in law or equity as material, unless the parties make it so; but, in the meaning of these terms, they did make it material, when they agreed to a specified time for its execution. What other object could they have had in fixing upon any given time? To change it without cause, and to say it is immaterial and of no account, is, in fact, to substitute a term in the contract against the express agreement of the parties."

Only ten years later, in an action at law where the rule relating to performance at a fixed time is more strictly enforced than in equity which frowns on forfeitures, the stringency of the *Ives* v. *Armstrong* language was somewhat relaxed, and in *Furlong* v. *Barnes*, 8 R. I. 226, we said at page 229:

> "* * * the contract is to receive a reasonable construction, having regard to its character and objects, and to the apparent meaning of the parties in view of the circumstances under which it was made. If, then, a particular time was stipulated, we may still inquire

what was meant by the stipulation. By the time designated, did the parties mean that particular time without the variation of a second, or that time subject to the latitude which is usual among business men in the matter of their business appointments? We think the latter rather than the former. A contract is not to be construed like a railway time-table. The parties to it need not be punctual to a minute, unless the contract calls for that degree of punctuality to carry out its purposes; but it is enough that they are on hand so as to keep their agreement, as regards the time, according to its substance and spirit; and it is the duty of each party to conduct with good faith and reasonable liberality towards the other."

Currently the emphasis is substantially different from the *Ives* v. *Armstrong* concept and while we still recognize the indisputable right of parties to make time of the essence in their contracts, *Hicks* v. *Aylsworth,* 13 R. I. 562, we nonetheless follow the rule that:

"* * * ordinarily contract provisions relating to time do not by their mere presence in an agreement make time of the essence thereof so that the breach of the time element will excuse nonperformance by the other party. * * * That the parties to a contract intended to make time of the essence may appear by express stipulation therein or it may be found in the nature or purpose of the contract or in the circumstances under which it was made. There must, however, be some evidence from which such intent can be ascertained, and the party contending that time is of the essence of the contract has the burden of proof thereon." *Sal's Furniture Co.* v. *Peterson,* 86 R. I. 203, 208.

In the present situation we find that the contract, as has already been observed, fixed the time for performance at 10 o'clock in the morning on October 30, 1964 or at such other time as should be mutually agreed upon by the parties; and it further stipulated that there should be automatic extensions of one month each pending the acquisition of the Chapel street property. Those terms standing alone

and without more do not indicate that the time fixed for performance was intended by the parties to be a material or an essential part of their agreement. Moreover, the record discloses no evidence that the vendee was in bad faith or that its delay was tantamount to an abandonment of the contract or that the vendor suffered as the result of the short delay. In all the circumstances a lapse of only six days — from April 30 to May 5 — was not unreasonable. *Miller* v. *Bronson*, 26 R. I. 62; *Dawley* v. *Potter*, 19 R. I. 372; 1 Restatement, Contracts §275, p. 402.

## V.

Finally we consider those of the vendor's objections which go to procedural rulings. First, it argues that the trial justice exceeded his jurisdiction when, after both parties had rested, he reopened the case on his own motion for the purpose of obtaining assurances that in the event relief were granted the first and second mortgages on the subject property would be released. The vendor mistakes discretion for jurisdiction, and a ruling permitting reopening will be disturbed only upon a showing of an abuse of discretion. *Kwasniewski* v. *New York, N.H. & H. R.R.*, 53 R. I. 144; *Cohen* v. *Superior Court*, 39 R. I. 272; *Goggin* v. *Goggin*, 59 R. I. 343. There was no such showing here.

A still further objection is that equity is here doing a vain thing. Specific performance, the vendor argues, should not be ordered when, as in this case, the ability to convey the good and marketable title called for by the agreement is dependent upon the willingness and the ability of the mortgagee of record, a stranger to these proceedings, to discharge or release partially the subject property from the two mortgages with which it was encumbered. The short

answer to that contention is that the judgment[4] gave the vendor an opportunity to seek a discharge or partial release of those mortgages and the performance ordered was conditioned upon those discharges or releases being obtained. The judgment anticipated the possibility that the required instruments might not be obtainable by retaining jurisdiction to give such further relief in the premises as the equities might require. We find that the superior court was well within its jurisdiction in entering such a judgment. *Wilson* v. *Brown,* 5 Cal.2d 425, 55 P.2d 485.

## VI.

The vendor in a shotgun approach has also urged many other contentions in an attempt to justify an unexplained refusal to carry out and perform its contractual obligation. While all have received due consideration, those not discussed are so patently either without legal foundation or irrelevant to the facts of this case that we summarily dispose of them by finding them to be without merit.

The respondent-vendor's appeal is denied and dismissed, and the judgment appealed from is affirmed.

---

[4]It reads in part as follows:

"1. Respondent shall apply to the Rhode Island Hospital Trust Company, within twenty (20) days from the date of the entry of this Decree for a release of its two mortgages on the subject real estate and shall comply in all respects with whatever may be necessary and proper for giving the complainant peaceable possession thereof, upon the delivery of the warranty deed as provided in Paragraph 2 hereof.

"2. Respondent shall make, execute, acknowledge and deliver to complainant a good and sufficient warranty deed, for the real estate described in the Bill of Complaint, according to the terms and conditions of said Agreement upon receipt of said release and payment of the sum of $41,000.00 which represents the balance of the purchase price.

"3. Either party shall be at liberty to apply to this Court for further direction or relief in the premises if occasion shall require."

148

*Moore, Virgadamo, Boyle & Lynch, Francis J. Boyle, Jeremiah C. Lynch, Jr.,* for complainant.

*Factor, Chernick & Hillman, William C. Hillman, Thomas H. Needham,* for respondent.