**HAXTON'S OF RIVERSIDE, INC.**

v.

**WINDMILL REALTY, INC.**

No. 82–459–Appeal.

Supreme Court of Rhode Island.

March 6, 1985.

Ralph T. Della Rosa, John G. Coffey, Jr., Kenneth R. Neal, Coffey McGovern Noel & Neal, Ltd., Providence, for plaintiff.

William R. Landry, Edwards & Angell, Providence, Asa E. Phillips III, Thomas G. Tumilty, DiCara Selig & Holt, Boston, Mass., for defendant.

## OPINION

SHEA, Justice.

This is an action brought in the Superior Court by the plaintiff, Haxton's of Riverside, Inc. (Haxton's), to recover damages for an alleged breach of contract by the defendant, Windmill Realty, Inc. (Windmill). Haxton's was the owner of real estate on Willet Avenue in East Providence designated as lot Nos. 514, 82, 81, and 76 on assessor's plat No. 58 in that city. On August 19, 1976, Haxton's entered into an agreement with Windmill (a wholly owned subsidiary of Dutchland Farms, Inc.) for the purchase of the Willet Avenue property

with closing scheduled for October 4, 1976. When the closing did not occur on the scheduled date, Haxton's filed suit, seeking to recover the difference in the contract price minus a $5,000 deposit ($70,000) and the amount actually received from a sale of the property to a third party ($40,000) plus additional expenses for taxes, insurance, and miscellaneous costs it claimed to have incurred by reason of Windmill's breach. The case was tried before a justice of the Superior Court sitting with a jury, and a verdict was returned for Haxton's in the amount of $30,000. Windmill filed an appeal, claiming that the trial justice erred in denying its motion for directed verdict as well as its motions for summary judgment, for judgment notwithstanding the verdict, and for a new trial. We affirm.

 The only issue properly before us in this appeal is the denial of the motion for directed verdict.[1] As we have stated on numerous occasions, our task is to "view the evidence in the light most favorable to [the nonmoving party], extracting from the record only those reasonable inferences that support his claim; we are not concerned with the weight of the evidence or the credibility of witnesses." *Carnevale v. Smith,* 122 R.I. 218, 219, 404 A.2d 836, 838 (1979).

There was evidence in the record establishing that on August 19, 1976, the parties entered into an agreement wherein Haxton's agreed to convey to Windmill by good and sufficient insurable warranty deed the land and buildings located at 925 Willet Avenue in East Providence. Delivery of the deed, free of any and all encumbrances, was to occur on October 4, 1976. The stated purpose of the acquisition was the establishment of a convenience store at the location. In the event the seller was unable to convey good title, the agreement provided for a refund of any deposit paid unless the buyer opted to waive any defect and take possession. In case of default on the part of the buyer, the seller was entitled to retention of the deposit and the right to pursue any legal and equitable remedies. The purchase price was $75,000; a $5,000 deposit was paid on execution of the agreement. A title search conducted by Windmill's attorney on September 21, 1976, disclosed a defect in title in the form of a reservation in the State of Rhode Island as predecessor in title of a right to restrict access to the property from Willet Avenue.

The testimony about what happened after the discovery of the title defect is conflicting. Windmill's attorney said that he notified his client about the encumbrance on September 21, 1976, and discussed available alternatives: waiving the defect and going through with the purchase, renegotiating the terms, or withdrawing their offer. He also testified that he contacted Haxton's real estate broker on the same day and informed him of the title defect and also, prior to October 4, 1976, told the broker that the closing was off.

The broker, on the other hand, testified that at no time prior to October 4, 1976, or until December of that year did he receive any information from Windmill's counsel regarding any defect in title. He stated that Haxton's was ready, willing, and able to perform its obligations under the agreement on October 4, but Windmill defaulted in its agreement because it could not obtain adequate financing. The broker further testified about repeated assurances by Windmill's counsel both before and after the closing date that the financing was

---

1. A motion for summary judgment is a request for judgment based on the pleadings and not only is inconsistent with the filing of a motion for directed verdict but is also inappropriate after trial has commenced. The denial of a motion for directed verdict forecloses reconsideration of the same issue under the guise of a motion for judgment notwithstanding the verdict. *Russo v. Odell,* 105 R.I. 349, 356, 252 A.2d 135, 138–39 (1969). Windmill's failure to furnish this court with a transcript of its motion for new trial precludes us from considering that issue on appeal. During oral argument, Windmill's counsel moved for leave to supply the transcript on the motion for new trial that would enable us to consider that issue. Haxton's counsel objected to the motion. After consideration by the court, that motion was denied.

forthcoming at any time and that it was unnecessary to execute a formal extension of the agreement. The closing did not occur on the scheduled date, and no extensions of the purchase and sale agreement were executed. On December 14, 1976, Haxton's counsel contacted Windmill and demanded that it perform under the contract and reimburse Haxton's for the expenses incurred after October 4, 1976. Subsequent to December 14, Haxton's actively advertised the Willet Avenue property and consummated a sale on April 21, 1977, to a third party for $40,000. On December 29, 1976, and on two subsequent occasions through April 22, 1977, Windmill's counsel communicated with Haxton's by letter, demanding return of the $5,000 deposit and citing only the expiration of the purchase and sale agreement as grounds. He made no mention of the title defect. Suit was commenced by Haxton's on May 19, 1977.

At trial, an officer of Old Stone Bank testified on the matter of financing, and various documents were introduced concerning commercial mortgage loan applications by Dutchland Farms, Inc., in connection with the Willet Avenue property. The first such application for $77,000 was dated September 16, 1976, to which Old Stone issued its commitment letter dated October 8, 1976, approving $48,000 of the amount requested. A second application was made on November 2, 1976, resulting in a blanket mortgage commitment for $76,800 dated December 2, 1976.

■ At the close of Haxton's case and again at the close of all of the evidence, Windmill moved for a directed verdict. The trial justice denied both motions on the ground that a factual issue existed concerning the question of whether Windmill had waived the defect in title by continuing to seek financing to consummate the transaction. In his ruling, the trial justice stated:

"I can readily see that the jury could find that the defendant knew of the defect in the title prior to the stipulated closing date, and intentionally waived that defect

in title by continuing to recognize the contract in existence, and seeking the financing to consummate this transaction. In other words, intention being a product of the mind must necessarily be proved through circumstantial evidence. And in this case there is ample circumstantial evidence to prove the intentional relinquishment of this known right. It is for the jury to decide who to believe in this case. The testimony of Mr. Daly [the broker] and Mr. McAleer [Windmill's counsel] is contradictory, which leads me to believe that one or the other is not telling the truth. It's for the jury to decide who is telling the truth."

We believe the trial justice was correct in denying the motion for directed verdict. The trial court, like this court, must view the evidence in the light most favorable to the nonmoving party, in this case, Haxton's. "If there exist issues of fact upon which reasonable men may differ, the trial court has no alternative other than to let the jury decide them." *Evans v. Liquori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977).

■ On appeal, Windmill contends that there is no evidence to support the application of the doctrine of waiver in this case. We disagree. We believe the cases *Pacheco v. Nationwide Mutual Insurance Co.*, 114 R.I. 575, 337 A.2d 240 (1975), and *Safeway System, Inc. v. Manuel Bros., Inc.*, 102 R.I. 136, 228 A.2d 851 (1967), are applicable. Although the *Pacheco* case is factually dissimilar, the principle enunciated therein is equally applicable to this case. In *Pacheco*, this court was required to distinguish between the doctrines of waiver and estoppel. There we said, in pertinent part, that "[w]aiver is the voluntary intentional relinquishment of a known right. It results from action or nonaction * * *." 114 R.I. at 577, 337 A.2d at 242. A party's actions can resolve the question of whether he or she has knowledge of the right waived and whether the waiver was voluntary. As a general rule, the question of whether a party has voluntarily relinquished a known right is one of fact for a

jury. *Doujotos v. Leventhal,* 271 Mass. 280, 283, 171 N.E. 445, 446 (1930).

On facts more in line with the present case, we discussed in *Safeway System* the legal consequences of the doctrine of waiver. In that case, the conduct of the buyer in pursuing a closing date even after the date specified in the buy and sell agreement and notwithstanding a clause relieving the buyer of its obligations thereunder was tantamount to a waiver. 102 R.I. at 140, 228 A.2d at 853–54. In the same vein, this court has held that a party for whose benefit a right is provided by agreement may waive such right by conduct inconsistent with the express terms of the agreement. *See Hattie Carnegie Industries, Inc. v. Lopreato,* 114 R.I. 319, 327–28, 333 A.2d 145, 150 (1975).

In this case, the purchase and sale agreement between Haxton's and Windmill expressly provided in clause 5 that Windmill could waive any defects in title. A factual issue existed concerning whether Windmill's conduct in continuing to negotiate for financing constituted a waiver of a known right. Consequently, there is no merit to Windmill's contention that the doctrine of waiver has no application in this case.

In the final analysis, viewing the evidence in the light most favorable to Haxton's, we have no difficulty in concluding that the trial justice was correct in denying the motion for directed verdict.

Since no other issue is before us, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.