Arlene VIOLET, Attorney General of the State of Rhode Island, and Roger Begin, General Treasurer of the State of Rhode Island

v.

TRAVELERS EXPRESS
COMPANY, INC.

No. 82–411–Appeal.

Supreme Court of Rhode Island.
Dec. 19, 1985.

Arlene Violet, Atty. Gen., Sheila Tobie Swan, Sp. Asst. Atty. Gen., for plaintiffs.

Thomas C. Plunkett, Leonard A. Kiernan, Jr., Kiernan Currier & Plunkett, Providence, for defendant.

OPINION

MURRAY, Justice.

This matter, involving the Uniform Disposition of Unclaimed Property Act, G.L. 1956 §§ 33–21–11 through 33–21–40, inclu-

sive, is before this court on appeal by the defendant Travelers Express Company, Inc. (Travelers), from a judgment entered in the Superior Court granting partial summary judgment in favor of the plaintiffs Dennis J. Roberts II and Anthony J. Solomon[1] (the state). We affirm.

Travelers is a Minnesota corporation licensed to sell money orders in Rhode Island. The instant matter involves money orders sold in this state by Travelers and its predecessor, Bondified Systems, Inc.,[2] from 1958 through 1974.

Pursuant to G.L.1956 § 33–21–12(c), as amended by P.L.1979, ch. 118, § 1,[3] any sum payable on a money order issued in this state that has been outstanding for more than five years is escheated to the state.[4]

Over a several-year period, Travelers filed annual reports of abandoned property with the General Treasurer, State of Rhode Island. These reports concerned money orders that had remained uncashed for the period specified in § 33–21–12(c). The instant action involves reports filed during the years 1974 through 1980 concerning money orders issued from 1958 through 1974. In each report Travelers expressly stated that the monetary amounts reported were "net of service charges." Travelers asserts that the service charges imposed reflect the costs of maintaining records of uncashed money orders. The face value of all money orders sold from 1958 through 1974 that remained uncashed for the period prescribed by § 33–21–12(c) totaled $47,713.64. However, Travelers reported and remitted $15,105.22, an amount that it represented to equal the total face value net of service charges.

On December 23, 1980, the state commenced the instant action in Superior Court. In substance, the state alleged that Travelers, by withholding service charges, had violated the Uniform Disposition of Unclaimed Property Act. In count 1 of its complaint, the state sought recovery of the service charges withheld, plus interest. Count 2 included a prayer for imposition of penalties pursuant to § 33–21–35, plus costs and counsel fees. In its answer, Travelers asserted the affirmative defense of estoppel.

The plaintiffs subsequently moved for summary judgment. By order entered on July 14, 1982, the trial justice granted summary judgment in favor of the state on count 1 of the complaint but denied the motion as to count 2. The trial justice held that Travelers had failed to show that its deduction of service charges was authorized by any provision of law. Further, assuming *arguendo* the existence of a contractual right to impose service charges on uncashed money orders, the trial justice concluded that Travelers had waived such privilege. Finally, the court rejected Travelers' estoppel argument.

On appeal to this court, Travelers advances three arguments in support of its allegation that the trial justice erred in granting partial summary judgment. First, Travelers contends that the phrase "sum payable" as employed in § 33–21–12(c) implicitly authorizes deduction of service charges. Travelers seeks to define "sum payable" as the face value of a money order minus any service charges. We find it unnecessary to address this argument in our disposition of this appeal. Travelers also contends that the trial justice erred in finding that defendant waived any right to deduct service charges. Final-

---

1. In January 1985 Arlene Violet and Roger Begin succeeded Dennis J. Roberts II and Anthony J. Solomon to the respective positions of Attorney General and General Treasurer, State of Rhode Island.

2. In 1963 Travelers succeeded to all of the rights and obligations of Bondified Systems, Inc.

3. The 1984 reenactment of G.L.1956 § 33–21–12(c) (P.L.1984, ch. 81, § 1) redesignated subdivision (c) as subdivision (3).

4. Prior to the amendment of § 33–21–12(c) in 1978, only sums payable on money orders that had been outstanding for more than seven years escheated to the state.

ly, Travelers asserts that the trial justice erred in determining that, as a matter of law, the evidence relied upon by Travelers was insufficient to trigger application of the doctrine of estoppel.

The granting of a motion for summary judgment is a drastic remedy that should be cautiously applied. *Commercial Union Companies v. Graham*, — R.I. —, —, 495 A.2d 243, 245 (1985). However, where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment properly issues. *Id*; *Ardente v. Horan*, 117 R.I. 254, 256–57, 366 A.2d 162, 164 (1976). In reviewing the propriety of a summary judgment order, this court is guided by the same standards as the trial justice. We must examine the pleadings, affidavits, admissions, and other pertinent evidence in the light most favorable to the party opposing the motion. *Commercial Union Companies*, — R.I. at —, 495 A.2d at 245; *Rhode Island Recreational Building Authority v. Industrial National Bank of Rhode Island*, — R.I. —, —, 494 A.2d 537, 539 (1985); *Steinberg v. State*, — R.I. —, —, 427 A.2d 338, 340 (1981). Applying this standard to the instant matter, we conclude that the trial justice properly granted partial summary judgment for the state.

■ "[W]aiver is the voluntary, intentional relinquishment of a known right." *Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, — R.I. —, —, 488 A.2d 723, 725 (1985) (quoting *Pacheco v. Nationwide Mutual Insurance Co.*, 114 R.I. 575, 577, 337 A.2d 240, 242 (1975)). Contractual rights may be waived by conduct inconsistent with the express terms of the agreement. *Haxton's*, — R.I. at —, 488 A.2d at 726; *see Hattie Carnegie Industries, Inc. v. Lopreato*, 114 R.I. 319, 327–28, 333 A.2d 145, 150 (1975). As a general rule, whether a party has voluntarily relinquished a known right is a question for the

trier of fact. *Haxton's*, — R.I. at —, 488 A.2d at 725–26. However, where, as in the instant case, no material issue of fact exists, summary judgment properly issues.

■ Assuming *arguendo*, as did the trial justice, the existence of an otherwise enforceable contractual right to deduct service charges from sums owing on uncashed money orders,[5] the undisputed facts before us demonstrate that Travelers waived this right. Travelers responded to plaintiffs' interrogatories in relevant part as follows:

> "*Interrogatory No 17*: With regard to service charges deducted from unclaimed property, under the policies and procedures of Traveler's Express, did Traveler's Express deduct such charges or fees in the event that the property was claimed by the owner prior to being reported or remitted to the General Treasurer or the State of Rhode Island?"

> "*Answer*: Traveler's Express has not done so with respect to any specific money order in the past, but at all times has and continues to claim the right to do so * * *."

(Defendant's Answers to Plaintiffs' First Set of Interrogatories, filed August 12, 1981.)

Further, in response to plaintiffs' requests for admissions, Travelers admitted that

> "in no instance in a transaction involving a money order sold in Rhode Island has Travelers Express Company ever required payment of a service charge by a person who has presented a money order for payment, even if it was presented more than a year after purchase."

(Plaintiffs' Request for Admissions, Number 5, filed September 16, 1981; Defendant's Responses to Request for Admissions, Number 5, filed October 22, 1981.)

■ As custodian of unclaimed property, the rights of the state's general treasurer are derivative. The treasurer acquires all

---

**5.** Travelers contends that as the result of certain language appearing on the reverse side of its money orders, the contractual relationship existing between itself and money order purchasers permits imposition of service charges.

rights of the rightful owner. Travelers, having waived its contractual rights as to individual purchasers of money orders, may not now enforce those same rights against the state. *Cory v. Golden State Bank*, 95 Cal.App.3d 360, 369, 157 Cal. Rptr. 538, 543 (1979); *Bank of America National Trust and Savings Association v. Cranston*, 252 Cal.App.2d 208, 214, 60 Cal.Rptr. 336, 340 (1967).

Finally, we find that the trial justice was correct in concluding that as a matter of law the defendant failed to prove its estoppel defense. Travelers contends that from 1974 through 1980 the state accepted its annual reports without objection. Each report stated that the amount reported was "net of service charges." Travelers argues that the state is now estopped from challenging Travelers' right to impose such service charges. The burden of proving the elements of such a claim is upon the party who asserts it. *Lichtenstein v. Parness*, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953). However, Travelers failed to raise by affidavit or otherwise a factual issue.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

BEVILACQUA, C.J., did not participate.