DECISION
Before this Court is an administrative appeal from the Building Contractor's Registration Board (Board). The plaintiffs, Re-Nu Homes, Inc. (Re-Nu) and Marie Tocco (Tocco), appeal the Board's Final Order that the contract between the plaintiffs and the homeowners, intervenors, James and Beatrice Hart (Harts), is breached and void. The plaintiffs also appeal the Board's finding that Tocco is personally responsible to the intervenors in her capacity as Re-Nu's corporate representative under G.L. 1956 §5-65-3. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
On April 17, 1995, a salesman from Re-Nu Homes, Inc. approached James and Beatrice Hart at their home in Cumberland, Rhode Island, to sell the Harts aluminum siding. (Statement of Claim, June 20, 1996.) The Harts signed a contract allowing Re-Nu to install aluminum siding on their home. The contract price was $11,700. The parties agreed that the Harts could have a week to think about whether they wanted the aluminum siding installed. (Statement of Claim, June 20, 1996.) The express terms of the contract, however, provided the Harts with a three-day right of cancellation. The next day, April 18, 1995, workers from Re-Nu appeared at the Harts' home, unloaded the aluminum siding, and began installing the siding. (Statement of Claim, June 20, 1996.)
The Harts did not object to Re-Nu's commencing the installation. As work was not done to Mr. Hart's satisfaction, he complained to the installer and even did some of his own work on the house. (Statement of Claim, June 20, 1996.) Though not satisfied with the finished product, the Harts paid Re-Nu $11,638 for the completed work. Mr. Hart attempted to contact Re-Nu to complain about the installed siding. When these attempts were unsuccessful, Mr. Hart photographed the house and sent the pictures to Re-Nu. Upon receipt of the pictures, Re-Nu called the Harts in an attempt to correct the problems with the installation. (Statement of Claim, June 20, 1996.)
When the aluminum siding was not fixed to the Harts' satisfaction, they filed a complaint with the Building Contractor's Registration Board. The complaint alleged breach of contract and negligence on the part of Re-Nu in the installation of the aluminum siding. (Statement of Claim, June 20, 1996.) Specifically, the Harts claim that the Cedar Impressions siding was improperly installed; that hexagon vents were not installed as required by the contact; and that one of the gutters was improperly installed. (Statement of Claim, June 20, 1996.) In response to the complaint, the Board sent an investigator to report on the Hart's complaint.
The Harts' claim was first heard by a Board Hearing Officer, Thomas Lepre (Hearing Officer), on November 7, 1996. The Hearing Officer took judicial notice of the report by the Board's investigator, Thomas Lanni, who found that the Harts were not specific in listing the problems with Re-Nu's workmanship, but that minor deficiencies existed. (First Hearing Tr. at 1.) The Hearing Officer issued a Proposed Order on November 8, 1996 ordering Re-Nu to fix any deficiencies in their work. Specifically, the Proposed Order stated that
 "The respondent is to return to the Hart property and complete the front siding, repair the lifted siding on the rear of the house, cap siding under deck . . . and install the hexagon vents on gable ends. * * * All work is to be completed within twenty (20) days of the receipt of this order." (Proposed Order, November 8, 1996.)
The Harts appealed this decision to the full Board. The Board found the contract between the parties to be both breached and void. This decision was based on Re-Nu's failure to honor the three-day waiting period expressly stated in the contract, poor workmanship and utilizing unregistered subcontractors. (Second Hearing Tr. at 13-15.) Furthermore, the Board sanctioned Re-Nu for allowing unregistered subcontractors to work on the Harts' house. (Second Hearing Tr. at 14.) Finding the contract to have been both breached and void, the Board awarded the Harts a judgment of $11,700. The Board further found Marie Tocco jointly and severally liable as Re-Nu's corporate representative. Re-Nu appeals the Board's Final Order.
 Standard of Review
This Court's review of the Board's decision is controlled by R.I.G.L § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Util. Comm'n.,694 A.2d 722 (R.I. 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 185 (R.I. 1994).
 The Board's Authority to Hear Breach of Contract Claims
The Building Contractor's Registration Board hears written exceptions to proposed orders issued by a Board Hearing Officer after an administrative hearing. Rule 01030 001 at 49-50. The Board may hear only certain claims. Specifically, G.L. 1956 §5-65-11 states that
 "The board shall only accept and make determinations of the following types of claims for damages against contractors registered under this chapter. This section applies to the following types of claims:
 (1) Claims against a contractor by the owner of a structure for the following in performing any work subject to this chapter:
 (i) Negligent work.
 (ii) Improper work.
 (iii) Breach of contract."
Neither the Board's enabling statute nor the Board's regulations contain any provision limiting the type of contract claim the Board may hear.
The Board is limited, however, in what it may consider in an appeal from a Hearing Officer's Proposed Order. Specifically, Regulation 5.1(7) states that, "[a]t the meeting of the members of the Board, the Board will consider evidence received at the hearing and exceptions and written or oral argument relative to the proposed order, but the Board will not consider new or additional evidence." Rule 01030 001 at 50-51. In making its determination, "the Board may affirm the proposed order and finding of fact, modify either or both, or send the case back to a new hearing." Rule 01030 001 at 51. Unless the case is remanded for a new hearing, the Board will issue a Final Order. Rule 01030 001 at 51.
The plaintiffs argue that the Board lacked jurisdiction to determine a breach of contract claim under the Door to Door Sales Act, G.L. 1956 § 6-28-1, et seq. Section 6-28-3 of that act permits a buyer a three-day right of cancellation for any contract signed by the buyer when solicited to buy a product at his/her home.[1] Initially, the Board never made any indication that they were relying on the Door to Door Sales Act. Additionally, the contract between Re-Nu and the Harts contains an express term providing the Harts a three-day right of cancellation. This provision is virtually identical to the language found in § 6-28-3. Specifically, the contract states that
 "This agreement may be canceled by an officer of the Contractor, but only within three (3) business days from the date of execution and in a similar manner of the Owner(s)' right of cancellation.
 You may cancel this Agreement without any liability to you, provided that you send a written notice to the Contractor by midnight of the third business day following your signing of this Agreement, by ordinary mail, posted, by telegram, or sent by delivery."
As an express contract term, the above provision was properly before the Board because the contract between the parties was introduced at the first hearing before Hearing Officer Lepre. (First Hearing Tr. at 3.) Therefore, it was within the Board's power to hear argument on that contract provision as part of its breach of contract determination.
 Void Contract versus Breach of Contract
The Board determined that the contract between Re-Nu and the Harts was both breached and void. Because they found the contract was void, the Board awarded the Harts the full contract price they paid to Re-Nu. "A contract is void, a contradiction in terms, when it produces no legal obligation upon the part of a promisor." John D. Calamari and Joseph M. Perillo, The Law ofContracts § 1-11, at 18 (3d ed. 1987). In juxtaposition, if a legal obligation exists between the parties, "[a]ny failure to perform a contractual duty which has arisen constitutes a breach. This is so even if the party who was to have received the performance had benefitted by its non- performance." Id. at 513.
The contract between the parties clearly is not void. Initially, a clear legal obligation existed between Re-Nu and the Harts. Re-Nu made a promise to provide and to install aluminum siding on the Hart's home while the Harts promised to pay for the aluminum siding. In a bilateral contract such as this, the parties each make promises that mutually obligate both parties. As a result, the parties are bound by their reciprocal promises.See Centerville Builders, Inc. v. Wynne, 683 A.2d 1340 (R.I. 1996).
Additionally, the Board's finding that the contract was void was based in large part on Re-Nu's commencing work within the three-day waiting period required by the contract. The Board's finding constituted an error of law. The Harts waived their rights under the three-day waiting period. "Waiver is the voluntary, intentional relinquishment of a known right." Violetv. Travelers Exp. Co. Inc., 502 A.2d 347, 349 (R.I. 1985) (citingHaxton's of Riverside, Inc. v. Windmill Realty, 488 A.2d 723, 725 (R.I. 1985); Pacheco v. National Mutual Ins. Co., 114 R.I. 575,337 A.2d 240, 242 (1975)). "Contractual rights may be waived by conduct inconsistent with the express terms of the agreement."Id. (citing Haxton's, 488 A.2d at 726). By commencing installation of the siding the day after the contract was signed, Re-Nu clearly breached the contract. The Harts, however, acquiesced to Re-Nu's start of performance, and Mr. Hart even assisted in some of the installation. The Harts' conduct was clearly inconsistent with their contractual rights. As such, the Harts waived their right of cancellation.
By not providing adequate workmanship, Re-Nu breached its contract with the Harts. The Board, therefore, may compensate the Harts for damages they incurred pursuant to G.L. 1956 § 5-65-12
(d). Even though a party stands in breach of contract, it is entitled to the value of the services performed under the contract. If a builder has substantially performed the contract, it is entitled to recover the contract price less the amount necessary to remedy any defect. National Chain v. Campbell,487 A.2d 132 (R.I. 1985). The amount of damages sustained as a result of the party's breach must be proven with a reasonable degree of certainty, and plaintiffs must establish reasonably precise figures as to the value of the work performed. Id. In this case, the value of the services performed should be established by additional facts through expert testimony. The determination of the value of services performed by Re-Nu may be made only by the Hearing Officer who is the finder of fact under the Board's regulations. See Rule 01030 001 at 39.
 Joint and Several Liability under § 5-65-3
Re-Nu also appeals the Board's finding that Marie Tocco, Re-Nu's corporate representative, is personally liable under G.L. 1956 § 5-65-3. As § 5-65-3 (a) existed at the time the Harts' complaint to the Board was filed, corporate representatives would not be joint and severally liable under § 5-65-3. This section was amended, however, on August 7, 1996. Section 5-65-3 (a) now states that
 "In the case of registration by a corporation or partnership, an individual shall be designated to be responsible for the corporation's or partnership's work. The corporation or partnership and its designee shall be jointly and severally liable for; the payment of the registration fee, as required herein, and for violation of any provisions of this chapter."
It is well-established that statutes are generally prospective and are effective after the date of the statute's enactment. Dunbar v. Tammelleo, 673 A.2d 1063 (R.I. 1996);Lawrence v. Anheuser-Busch, Inc., 523 A.2d 864 (R.I. 1987). A statute will only be given retroactive affect if the statute contains clear and explicit language requiring retroactive application. Id. Nothing within the 1996 amendment to § 5-65-3
indicates that it should be applied retroactively. The amendments are void of any clear language necessitating retroactive application of the amendments. In this case, the 1996 amendments to § 5-65-3 are clearly prospective in nature; therefore, this case is governed by § 5-65-3 as it existed in 1995. The 1995 version of § 5-65-3 is devoid of any mention of liability to the corporate representative.
After review of the entire record before the Board, this Court finds that the Board's decision to void the contract was clearly erroneous in view of the reliable, probative, and substantial evidence on the record. As such, the Board abused its discretion, and its decision finding the contract void must be reversed. The Board's determination that Re-Nu was in breach of contract was supported by reliable, probative, and substantial evidence such that the plaintiffs' rights were not substantially prejudiced. The Court, therefore, remands this portion of the case to the Board with instructions for the Board to further remand the case to the Hearing Officer to hear additional evidence to ascertain the value of services performed by Re-Nu. This Court further finds that the Board's determination that Marie Tocco is jointly and severally liable to the Harts constituted an error of law, substantially prejudiced the rights of the plaintiffs, and must be reversed. Accordingly, the decision of the Board is affirmed in part, remanded in part, and reversed in part.
Counsel shall prepare the appropriate order for entry.
[1] "In addition to any right otherwise to revoke an offer, the buyer may cancel a home solicitation sale or lease of merchandise by posting written notice of cancellation to the seller at the address specified for notice of cancellation provided by the seller not later than midnight three (3) days following the buyer's signing the agreement . . . . * * * Notice of cancellation given by the buyer shall be effective if it indicates the intention of the part of the buyer not to be bound by the home solicitation sale or lease of merchandise." G.L. 1956 § 6-28-3.