[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is back before the Superior Court following the Supreme Court's reversal, remand and directive that this Court consider Defendant's Affirmative Defense.
 Travel
Following a jury-waived trial in April and June, 2003, this Court entered judgment for the plaintiff in the amount of $5,321 plus interests and costs. That judgment resulted in part from this Court's disallowal of defendant's request to present an affirmative defense. This decision incorporates the factual findings set forth in its June 8, 2003 Order and augments those findings with the testimony presented in furtherance of the affirmative defense.[1]
 The Affirmative Defense
Defendant does not dispute that he has failed to pay plaintiff $5,321. which is the balance owed under the written contract at issue. However, defendant alleges that "[p]laintiff failed to perform certain contract work and specifications in a good and workmanlike manner and according to the plans and specifications. As a result thereof, plaintiff has partially breached the subject contract by failing to perform said work in a good and workmanlike manner." (Complaint — First Affirmative Defense). In short, defendant alleges that the shoddy workmanship performed by plaintiff is a defense to his non-payment. This court agrees.
 Additional Findings
During trial, Defendant Raymond Bardsley authenticated a large number of photographs which he took of his house. Several of these photographs were admitted as full exhibits. Some of these clearly show defects in the home sold to defendant by plaintiff. The photographs corroborate in part the testimony by Bardsley as to the condition of his home and apparent defects which were present from the time that the modular home was placed on defendant's foundation. Bardsley's testimony and the photographic exhibits become important in establishing that many of the defects identified by defendant's construction expert are not of recent origin but rather, were present from the time the home was delivered.
As clearly demonstrated by the evidence at trial, Defendant Bardsley was impressed by the quality of the homes manufactured by plaintiff. Bardsley examined the model homes on display at plaintiff's factory and as a result of his very favorable opinion, ordered a house for delivery on to a foundation he owned. And, although the house ordered by defendant was customized to his specifications, plaintiff, through its president, Richard Wildermuth, acknowledged that defendant's home would "be constructed in a manner equal to the workmanship shown in (plaintiff's) models." Tr. p. 66, l. 4-6.
Once the house was delivered, substantial finish work in the nature of plastering and siding remained to be performed by plaintiff. There were apparent issues as to the performance of this finish work from the outset. Tr. p. 38, l. 4-19. Defendant provided representatives of plaintiff with a list of items that plaintiff needed to repair. Tr. p. 88, l.6-11. It was plaintiff's position at trial that all of these items were corrected. Accordingly, plaintiff seeks the $5,321. owed which Defendant Bardsley promised to pay upon the completion of the work. Tr. p. 76, l. 19-25, p. 77, l. 1-16.
However, as defendant testified, the work which he regarded as defective was never properly addressed. See e.g. Tr. p. 102, l. 9-14; p. 101, l. 14-27; p. 105, l. 14-25 and p. 106, l. 1. It is the cost to repair the defects which defendant claims were never fixed properly or even addressed, that constitutes the affirmative defense to plaintiff's claim for $5,321.
Pursuant to the mandate of the Supreme Court in this case, this Court considers the testimony given by Paul Pierce, Jr. as substantive evidence. Pierce, a south county contractor for twenty-five years was hired by defendant in January, 2003 to inspect the subject house and give cost estimates regarding the repair of defects which defendant Bardsley, through testimony and photographs, identified as defects existing at the time plaintiff discontinued working on the house in the summer of 2000.[2] Pierce, a carpenter, estimator and a residential contractor was clearly qualified to express opinions as to quality of workmanship and estimated cost to repair.
One defect examined was the west wall of the garage where a 12 foot long section was determined to be noticeably out of plumb. Pierce estimated that it would cost $3,850 to correct this problem. Tr. p. 174, l. 15.
Another defect Pierce observed was trim around the exterior front door. (Ex. WWW). Pierce estimates that the cost of repair is $125. Tr. p. 177, l. 10. Another defect observed was loose vinyl which Pierce opined was caused by either defective (bulging) plywood sheeting underneath, or insufficient nails being used at the time of installation. Cost of repair is estimated to be $175.
Pierce observed additional problems inside the house. "Some of the walls" (Tr. p. 182, l. 4) and many ceiling areas had never been properly sanded and smoothed prior to painting. To rectify this Pierce estimated that it will cost $6,200. Tr. p. 185, l. 9.
Pierce also noted irregular staining around nail holes in the naturally stained wood trim. However, Pierce could not be certain that this was not caused by the natural effects of ultraviolet (UV) light over time. Accordingly, defendant's proof as to this defect being the responsibility of the plaintiff fails.
Pierce noted at least two other defects. One is an upstairs wall which was noted to be substantially out of plumb. (Ex. PPP). Pierce estimated the cost of repair to be $425. (Tr. p. 194, l. 16). Lastly, Pierce determined that the door between the garage and the inside of the house does not operate correctly because of either a defect in the door frame or the wall on which it has been installed. Cost to repair is estimated between $275. and $1,350. Tr. p. 195, l. 22-23. Thus, substantial, credible evidence exists to the effect that the cost of repairing the defects exceeds plaintiff's demand for payment under the contract.
 Discussion
Plaintiff seeks the amount due under the contract, a sum of $5,321. Although plaintiff has forcefully argued that the sum has been due since the date on which the manufactured home was placed on defendant's foundation, it is clear that the "time is of the essence" feature of the contract was knowingly waived. See Violet v.Travelers Express Co., 502 A.2d 347 (R.I. 1985).
Mr. Wildermuth testified that he expected payment in full after his company had addressed the "punch list" of defects in the summer of 2000. However, defendant has proven, by a preponderance of the evidence, that defects present at the time plaintiff delivered the home were not corrected.
The plaintiff substantially performed under a written contract to manufacture and deliver a specified modular home of a certain quality to defendant. This Court finds, however, that the product as delivered had defects which plaintiff was responsible for rectifying.[3]
Those defects were not rectified by plaintiff. Defendant's expert in home construction provided credible evidence that, as to the below listed defects, the related costs are fair and reasonable to remedy such defects.
Repair garage wall and siding $3,850.
Front door trim 125.
Loose vinyl siding 175.
Rough plaster/paint on walls and ceiling 6,200.
Second floor wall 425.
Door between garage and house 275. — 1,350.
 Conclusion
Inasmuch as the reasonable cost to rectify the defects for which plaintiff was responsible exceeds the amount owed plaintiff under the contract, judgment shall be for the defendant, and the plaintiff shall receive nothing.
[1] This Court allowed defendant to present the testimony of his expert witness as an offer of proof. The intent of this Court was to avoid a new trial should the Supreme Court decide that it was error to disallow such testimony in furtherance of an affirmative defense.
[2] Although the home was manufactured and then placed on the foundation in the summer of 1999, the parties agreed that a "punch list" of defects and finish work could be addressed by plaintiff incident to the inspection which is routinely performed about one year following home delivery.
[3] Plaintiff substantially performed under the contract. Accordingly, plaintiff is entitled to the contract price less the cost to cure defects in workmanship. See Butera v. Boucher, 798 A.2d 340,346 (R.I. 2002).