**W. & H. JEWELRY CO., Inc.**
v.
**The AETNA CASUALTY AND SURETY COMPANY.**
Civ. A. No. 1742.

United States District Court
D. Rhode Island.
April 13, 1956.

Mortyn K Zietz, Aram A. Arabian, Providence, R. I., for plaintiff.

Matthew W. Goring, Stephen B. Ives, Jr., Providence, R. I., for defendant.

DAY, District Judge.

This is an action upon an insurance policy issued by the defendant to the plaintiff insuring it against direct loss from water damage. Jurisdiction is based upon diversity of citizenship and the existence of a controversy of the requisite amount.

In its complaint the plaintiff alleges that on, to-wit, November 15, 1952 it entered into a contract of insurance with the defendant whereby the defendant agreed in consideration of the premium paid by plaintiff to insure it after November 15, 1952 for a specific period against all direct loss by water damage as contained in its policy of insurance No. 43 WD 674; that the defendant agreed that water damage shall be held to mean accidental discharge of water or steam from heating systems, industrial or domestic appliances; that on, to-wit, September 7, 1953, while said policy was in full force a loss occurred in accordance with the terms of the policy caused by the accidental discharge of steam from a heating or steam system or steam boiler located on the premises covered by the policy, and that as a result thereof certain property of the plaintiff was either damaged or destroyed, and that the plaintiff seeks to recover these damages.

In its answer the defendant admits that it entered into said contract of insurance, known as a water damage policy, No. 43 WD 674, and denies the remaining allegations of the complaint. It further sets up therein by way of defense to this action that the plaintiff failed to comply with the provisions of said contract of insurance in the following particulars, i. e., (1) that the first notice of loss was not given by the plaintiff to the defendant until April 5, 1954, and (2) that no proof of loss was filed by the plaintiff with the defendant within the sixty-day period provided in the policy or at any other time.

From the evidence it appears that said policy No. 43 WD 674 was issued at Providence, Rhode Island, on November 15, 1952; it insured the plaintiff against all direct loss by water damage as stipulated therein; the policy provides that it is made and accepted subject to the provisions and stipulations therein stated; by its provisions the term "Water Damage" is held to mean the accidental discharge, leakage or overflow of water or steam from divers sources, including plumbing systems, (excluding sprinkler systems) and heating systems; that the provisions thereof concerning notice of loss and the filing of proofs of loss are as follows:

"The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured—;"

the policy also contains the following provision:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and commenced within the limitation of time permitted by law."

Subsequent to the issuance of this policy and while it was in effect the plaintiff's plant, located in Providence, was closed at the end of the working day on Friday, September 4, 1953 for the Labor Day week-end which was to follow with its re-opening scheduled for September 8, 1953; that on the morning of September 8, 1953, the manager of the plaintiff arrived at plaintiff's plant and found that steam had been escaping for an indefinite time in the coloring room of plaintiff's plant and had done considerable damage

**298**

to the property located therein; that upon entering the premises the manager had encountered an employee who had served notice on the previous Friday that he was "fed up" with his job and was quitting that day, and who gave an unusual explanation for his presence there on September 8th; that it was the duty of this employee to shut off the boiler of the plaintiff's plant when steam was not needed for its operations; that the task of repairing the damage discovered on September 8, 1953 continued until October 18, 1953; on October 26, 1953, a notice of loss was given by the plaintiff to a number of fire insurance companies, including the Automobile Insurance Company, which had issued policies of fire insurance on the plaintiff's premises and their contents which contained extended coverage against loss from "malicious mischief"; this notice of loss stated the loss occurred on September 5, 1953; that the kind of loss (meaning the cause thereof) was malicious mischief and that the probable amount of the entire loss was $5,000; from October 26, 1953 until March 26, 1954 the officials of the plaintiff both orally and in writing continuously insisted to its insurers that its loss had been caused by a disgruntled employee who had served notice on September 4, 1953 that he was quitting and who deliberately left the steam lines open with a malicious design to do damage, affidavits of other employees to this effect were obtained by the plaintiff and submitted to these fire insurance companies, including Automobile Insurance Company, in support of plaintiff's claim that its loss was due to malicious mischief; on March 26, 1953, the president of the plaintiff while still insisting plaintiff's damage was caused by "a malicious act of a disgruntled employee who had been informed of his discharge" called the attention of the agent who sold plaintiff the policy involved here to the fact that this policy had not been considered by him in previous conferences pertaining to the loss; this agent replied to the effect that he found nothing encouraging in the policy but suggested that he send him a complete story of the loss; upon the following day the president replied, asserting a claim under water damage policy No. 43 WD 674 and enclosing a statement of estimated loss amounting to $33,100; on April 5, 1953, an insurance broker with whom the plaintiff's agent had discussed the possibility of coverage of the loss under policy No. 43 WD 674 advised the superintendent of the claim department of the defendant of plaintiff's claim; on April 27, 1953, he confirmed in writing his statement to the broker that the loss did not fall within the terms and provisions of policy No. 43 WD 674; nothing further was done by the defendant's superintendent of claims until after May 27, 1953 when he wrote to the plaintiff that "any action taken by this company in relation to the above captioned claim shall be done with a full reservation of all its rights and defenses under said policy and in no event shall any act operate as a waiver of any rights or defenses which it may have under said policy"; that he wrote this letter following a letter from the plaintiff on May 17, 1953 and telephone calls and requests to honor plaintiff's claim and to investigate it; thereafter he visited the plaintiff's plant on at least two occasions to investigate and discuss the claim with representatives of the plaintiff, but refused to pay it.

At the trial the plaintiff claimed the loss suffered by it amounted to $18,335.-39. Defendant undertook to attack the accuracy of this total but presented no evidence as to the extent of plaintiff's loss.

In addition to disputing the cause of plaintiff's loss the defendant contends that plaintiff cannot maintain this action because of its failure to comply with the requirements of said policy as to notice of loss and the filing of proofs of loss. The plaintiff contends that notice was given to the defendant as required by the policy, and, in the alternative, that if notice was not given that the defendant waived the policy requirements as to immediate notice and the filing of proofs of loss.

Since the policy was issued in the state of Rhode Island, the rights of the parties thereunder must be decided in accordance with the law of Rhode Island as determined by its Courts, if such determination has been made. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Plaintiff argues that since timely notice of loss was given by the plaintiff to Automobile Insurance Company on its fire policy this was notice to the defendant. It bases its argument on the premise that Automobile Insurance Company and the defendant were "affiliated" companies. This argument though ingenious is in my opinion completely without merit, and in view of the evidence in this case, calls for no extended discussion by me.

In the case of Sherwood Ice Co. v. United States Casualty Co., 40 R.I. 268, 100 A. 572, the Supreme Court of Rhode Island held that a delay of 142 days in giving notice of loss to the insurer was unreasonable as a matter of law and did not comply with the requirement of immediate written notice in the absence of sufficient excuse for such delay. The holding of this case was followed in Standard Accident Insurance Co. v. Turgeon, 1 Cir., 140 F.2d 94, where the Court held that a delay by the insured of almost seven months in giving notice of an accident was unreasonable as a matter of law and did not comply with policy requirements in the absence of sufficient excuse for such delay. In each of these cases the plaintiff was denied recovery by reason of failure to give immediate notice of loss. Furthermore, in Sherwood Ice Co. v. United States Casualty Co., supra, it was held immaterial that there was no showing that the defendant was prejudiced by the delay in giving the notice of loss.

In this case the notice that was given was not written as required by the policy. It was oral and was not given until 210 days after the occurrence of the loss. In my opinion this delay was inexcusable and unreasonable as a matter of law and bars a recovery by the plaintiff unless the defendant has waived the default in this respect.

It is admitted that the plaintiff failed to file a sworn proof of loss as required by the policy. This failure to comply with the policy requirement would likewise bar this action in the absence of proof of a waiver of this requirement. Caracuzzo v. Orient Ins. Co., R.I., 141 A. 309.

It has been held in Rhode Island that notice by an insurance company to an insured *before* the expiration of the period provided by the policy for filing of written proof of loss that it refused to pay the insured's claim was a waiver of the defense based on failure of the insured to file proof of loss. Moran v. Commerce Ins. Co., 68 R.I. 56, 26 A.2d 533; Massell v. Protective Mutual Fire Ins. Co., 19 R.I. 565, 35 A. 209. In the latter case the Court held, 19 R.I. at page 568, 35 A. at page 210:

"* * * A party may waive conditions which are intended for his benefit. Proofs of loss are for the benefit of the insurer, to give information of the extent and character of the loss. But they are of no avail if the insurer, in advance, denies all liability for the loss. Their production would be only an idle ceremony which the law will not require of the insured."

However, in the present case the disclaimer of liability by the defendant was not made until many months after the expiration of the period for the filing of a proof of loss. The time for the performance of that requirement by the plaintiff had long passed. It cannot be said that the disclaimer by the defendant excused the nonperformance by the plaintiff or indicated to it that it would be idle for it to furnish a proof of loss in the manner and during the time stipulated in its policy.

I have been unable to find any decision by the courts of Rhode Island to the effect that a disclaimer of liability on other grounds *after* the expiration of the period for the filing of proof of loss coupled

with a subsequent investigation by the insurer of a claim amounts to a waiver by the insurer of the defenses of failure to give immediate written notice of the loss and to file a sworn proof of loss.

An exhaustive examination of the authorities elsewhere reveals an irreconcilable conflict as to whether such actions by an insurer after the expiration of the period for filing a proof of loss amounts to a waiver of such defenses.

In my opinion the authorities which hold that disclaimer of liability on other grounds than the failure to give immediate notice of loss and to file proof of loss as stipulated in the policy coupled with a subsequent investigation of the claim after the expiration of the period for filing proof of loss does not waive those defenses represents the better doctrine and should be followed by me. Among these authorities are: Travelers' Ins. Co. of Hartford, Conn. v. Nax, 3 Cir., 142 F. 653; National City Bank v. National Security Co., 6 Cir., 58 F.2d 7; J. T. Knight & Son, Inc., v. Superior Fire Ins. Co., 5 Cir., 80 F.2d 311; Conley v. Fidelity-Phenix Fire Ins. Co. of New York, D.C.W.D.Ark., 102 F.Supp. 474; Friedman v. Orient Ins. Co., 278 Mass. 596, 180 N.E. 617; Milton Ice Co. v. Travelers Indemnity Co., 320 Mass. 719, 71 N.E.2d 232; Rose v. New York Life Ins. Co., 127 Ohio St. 265, 187 N.E. 859.

██ Waiver is the intentional relinquishment of some known right. Metcalf v. Phenix Ins. Co., 21 R.I. 307, 43 A. 541; Inventasch v. Superior Fire Ins. Co., 48 R.I. 321, 138 A. 39. Interpreting the facts in a light most favorable to the plaintiff I fail to see where they support any inference of a waiver by the defendant of the failure of the plaintiff to give immediate notice of loss and to file a sworn proof of loss. In my opinion its nonperformance of these conditions precedent to an action on the policy which nonperformance was not waived by the defendant bars it from recovery here.

My conclusion in this regard makes it unnecessary for me to determine whether the plaintiff has established by the required degree of proof that its loss was in fact caused by the accidental discharge of steam and hence within the coverage of the policy.

Judgment may be entered for the defendant.