**Thomas J. FLATLEY, Plaintiff, Appellee,**

v.

**GREAT AMERICAN NURSING CENTERS, INC., Defendant, Appellant.**

No. 85–2015.

United States Court of Appeals, First Circuit.

Argued April 8, 1986.

Decided Oct. 10, 1986.

Judith Colenback Savage, with whom William P. Robinson, III and Edwards & Angell, Providence, R.I., were on brief, for defendant, appellant.

Richard W. MacAdams, with whom Christopher C. Whitney and Adler Pollock & Sheehan, Inc., Providence, R.I., were on brief, for plaintiff, appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Defendant-appellant Great American Nursing Centers, Inc. (GANCI) appeals from a final order of the United States District Court for the District of Rhode Island which awarded plaintiff-appellee Thomas J. Flatley (Flatley) a judgment of $250,000, plus interest and costs, on his complaint for breach of contract. The district court denied GANCI's counterclaim, which also alleged breach of contract. For the reasons stated below, we affirm.

*Factual Background*

GANCI is a Delaware corporation with its principal place of business in Warwick, Rhode Island. GANCI owns and operates four nursing homes, "Grand Island," "Kent," "Grandview," and "Skyview," which are the subject of the purchase and sale agreement at issue in this appeal. Thomas J. Flatley is a citizen of Massachusetts and does business as The Flatley Company, a real estate development firm with its principal place of business in Braintree, Massachusetts.

The district judge, ruling from the bench, found the facts below to be as follows. At some point between September 20 and 24, 1984, GANCI, through its President and General Counsel Guido Salvadore (Salvadore), informed the Flatley Company that GANCI would consider the sale of four nursing homes that it owned and operated.

Consequently, on September 27, 1984, Flatley and Salvadore reached a *tentative* agreement for the sale by GANCI to Flatley of its four nursing home properties at a price of thirteen million five hundred thousand dollars ($13,500,000). Thirteen million dollars were to be payable in cash or in a variety of deferred payment options as GANCI might elect. The remaining five hundred thousand dollars were to be payable *without interest* over a five year period in five equal installments, commencing in the sixth year following the closing and concluding in the tenth. Presumably, both Flatley and Salvadore believed that the terms of this tentative agreement would be reflected in a contract to be drafted and signed by them the next day.

On September 28, 1984, representatives of Flatley met with Salvadore to draft a contract. The parties needed to file a finalized purchase and sale agreement by midnight in order to take advantage of certain step-up in basis provisions available in the computation of cost reimbursement under the Medicaid statutes and accompanying Rhode Island regulations. The district court found as fact that the parties were

operating under an extreme sense of urgency to draft a contract agreeable to both of them, so that it could be filed before the midnight deadline.

The result of the parties' urgency was the asset purchase agreement of September 28, 1984 (henceforth "September 28 Agreement" or "Agreement"). The source of controversy below, Article XVIII of the Agreement, provides as follows:

XVIII. TERMINATION; AMENDMENT:

Promptly after the execution of this Agreement, Buyer and his employees, auditors and agents shall commence an inspection of the properties and assets being sold hereunder, and of the records (financial and otherwise) of Seller relating to such properties and assets. Seller shall cooperate with Buyer in order to enable Buyer to make such inspection. *If in the course of such inspection Buyer shall determine, in his sole discretion, for any reason, that amendments are required to this Agreement, the Buyer shall deliver to Seller a proposed amendment to this Agreement, provided, that such proposed amendment shall not change in any material respect the substance of the provisions of this Agreement relating to (a) the amount of the purchase price, (b) the allocation of the purchase price as set forth in Article XVII, (c) the closing date, and (d) the options given to Seller for payment of the purchase price, ...* If such amendment is not executed by Seller in the proposed form within fourteen (14) days after delivery of such form of amendment, then at Buyer's option, to be exercised by written notice to Seller, this agreement shall terminate and be of no further force and effect and the $250,000 deposit made by Buyer on the date of this Agreement shall immediately be returned to Buyer....

(Emphasis supplied).

Flatley proceeded, on October 2, 1984 and pursuant to Article XVIII, to inspect the nursing home properties and financial records related thereto. On October 3,

1984, and again pursuant to Article XVIII, Flatley submitted a restated asset purchase agreement ("First Restated Agreement"). GANCI rejected the First Restated Agreement; however, according to the district court's findings, this rejection was general and not communicated to Flatley as based on GANCI's perception that the proposed amendments exceeded the permissible scope of Article XVIII.

On October 17, 1984, Flatley submitted to GANCI, again pursuant to Article XVIII, a second restated asset purchase agreement ("Second Restated Agreement"). The parties agreed to extend the time within which GANCI could approve the Second Restated Agreement until 5:00 p.m. on November 19, 1984. However, according to the district court, the Second Restated Agreement "proved to be unsatisfactory" to GANCI.

The next step taken by the parties was to allow Salvadore to propose an acceptable agreement on behalf of GANCI, given that the efforts of Flatley's representatives had thus far failed. Accordingly, on November 12, 1984, Salvadore delivered a third restated version of the original contract ("Third Restated Agreement"). At 10:00 a.m. on November 19, 1984, Flatley's representative Charles Nichols (Nichols) declared that the Third Restated Agreement was unacceptable, that the deal was off, and that Flatley's $250,000 binder, given to GANCI as partial payment on the original Agreement, must be returned. Subsequently, this demand was refused by Salvadore.

On November 20, 1984, Flatley officially terminated the Agreement on the ground that GANCI had failed to approve the Second Restated Agreement within the time period set forth in Article XVIII as extended by the parties (i.e., by 5:00 p.m. on November 19, 1984). Salvadore, likewise, wrote Flatley on November 20 and December 27, 1984, alleging that GANCI was under no obligation to approve the "Restated Asset Purchase Agreement," because it contained amendments beyond the scope of Article XVIII.

Flatley proceeded to file suit in the district court alleging breach of contract by GANCI and demanding the return of the $250,000 binder. GANCI counterclaimed that Flatley, by allegedly proposing amendments beyond the scope of Article XVIII, was the party in breach and that GANCI was entitled to retain the $250,000 as liquidated damages.[1]

*Proceedings before the district court*

The focus of controversy between the parties below was the meaning of Article XVIII, specifically, the nature and scope of amendments that Flatley could unilaterally impose and that GANCI must accept within 14 days or return the $250,000. GANCI's contention was that Article XVIII must be narrowly construed *only* to allow amendments specifically related to or arising out of Flatley's inspection of the properties and the financial records related thereto. Flatley, by contrast, argued for a *broad* amendatory power under Article XVIII, which would have entitled Flatley to unilaterally impose amendments as to any area of the contract *except* the four areas designated as unamendable by Article XVIII: (1) the amount of the purchase price; (2) the allocation of the purchase price as set forth in Article XVII; (3) the closing date; and (4) the options given to GANCI for payment of the purchase price.

In considering the parties' diametrically opposed interpretations of Article XVIII, the district court admitted extrinsic evidence of the parties' intent and accepted Flatley's version. Thus, the court concluded that, given the rush and urgency surrounding the drafting of the September 28 Agreement, the parties had intended, and the language of Article XVIII allowed, that Flatley have *broad* amendatory powers under Article XVIII, except as to items (1)–(4) above.

It is at this point, however, that the district court's ruling from the bench is difficult to follow. We read the court below as having made three findings. First, as to Flatley's First Restated Agreement of October 3, 1984, the district court found that Flatley's proposed amendments redefined the subject matter of the contract and therefore effectively altered the purchase price in violation of Article XVIII. However, the court also found that GANCI, by not *specifically* grounding its objection to the First Restated Agreement on Article XVIII grounds, thereby waived the right to raise the Article XVIII point at trial.

Second, the court concluded that Flatley had corrected the vices of the First Restated Agreement by removing them from the Second Restated Agreement, which the trial court regarded as proper and legitimately submitted under Article XVIII. Accordingly, the district court held that GANCI, by not accepting the allegedly proper Second Restated Agreement within the time period prescribed in Article XVIII, was in breach.

Third, the district court noted that GANCI had all along failed to disclose to Flatley the existence of certain lease agreements. These agreements, said the district court, rendered GANCI in violation of Article 5.B of the September 28 Agreement, which contained a warranty that the execution of the purchase agreement would not cause a violation and/or default of any lease. The court, however, did not rely on the leases as a basis for its conclusion that GANCI was in breach since, in the court's view, it had already found sufficient grounds to conclude that Flatley was entitled to the return of the $250,000 binder.

On appeal, GANCI challenges the district court's holding on three grounds. First, GANCI contests the district court's conclusion that Flatley's amendatory power under Article XVIII is broad, both on the

---

**1.** Clause XIX of the agreement provides:
DEFAULT:
In the event Buyer defaults in the performance of this Agreement, Seller shall be entitled to retain the deposit of $250,000 as liquidated damages and Seller shall be entitled to such further damages as Seller may have reasonably sustained and Seller shall be entitled to such further remedies including the remedy of specific performance to which Seller is entitled under applicable law.

ground that Article XVIII was not so ambiguous as to require extrinsic evidence on the issue of its scope, and that regardless, the extrinsic evidence received does not at all support the district court's conclusion. Second, GANCI argues that Flatley should be held in breach on the ground that Flatley withdrew from all negotiations at *10:00 a.m.* on November 19, 1984, and thus deprived GANCI of the right to accept any proper amendments by *5:00 p.m.* that day, the deadline under the contract. Third, GANCI argues that, even accepting a waiver by GANCI of any Article XVIII objection to the First Restated Agreement, such waiver was not found by the district court, and did not in fact occur, with respect to the Second Restated Agreement. Therefore, because GANCI regards the Second Restated Agreement as exceeding even the broad Article XVIII amendatory powers found by the district court, GANCI urges us to reverse the district court's conclusion that the Second Restated Agreement was "legitimately imposed." For the reasons stated below, we reject all appellant's arguments and affirm the district court opinion on the ground that GANCI waived the right to raise an Article XVIII objection to the Second Restated Agreement.

### 1. *Whether the district court erred in finding a broad amendatory power for Flatley under Article XVIII*

GANCI challenges the district court's central conclusion below—that Flatley's amendatory power under Article XVIII was a broad one—on two separate grounds. First, GANCI contends that the "clear and unambiguous" meaning of Article XVIII allowed Flatley only a narrow amendatory power. Second, GANCI argues that, even assuming the language of Article XVIII was sufficiently ambiguous so as to allow the introduction of extrinsic evidence, the district court's finding of a broad amendatory power was clearly erroneous because the evidence received does not support the district court's conclusion. We address each claim in turn.

### a. *The clear and unambiguous nature of Article XVIII*

The language in Article XVIII is far from clear and unambiguous. On the one hand, it cannot be doubted that much of Article XVIII revolves around Flatley's right of inspection. On the other hand, to read Article XVIII as only allowing amendments relating to or arising out of Flatley's inspection would be to render superfluous the four specific limitations on the right of amendment set forth in the third sentence of Article XVIII. *See Systemized of New England, Inc. v. SCM, Inc.*, 732 F.2d 1030, 1034 (1st Cir.1984) (contracts should be interpreted so as to avoid rendering language mere surplusage). Accordingly, we are left to conclude either that the "plain" meaning of Article XVIII supports a broad amendatory power for Flatley (limited in only four respects), or that the "plain" meaning as asserted by GANCI is not so plain at all. In either case, however, we cannot fault the district court for regarding Article XVIII as sufficiently ambiguous so as to require the admission of extrinsic evidence to determine the parties' intent.

We further note that the inherently ambiguous nature of Article XVIII (and hence, the need for extrinsic evidence to interpret it) is corroborated by the use of different language to precede Flatley's right of amendment and its right of termination. As to the right of amendment, Article XVIII states that "[i]f in the course of such inspection Buyer shall determine, in his sole discretion, for any reason, that amendments are required to this Agreement, Buyer shall deliver to Seller a proposed amendment ...." As to the right of termination, however, Article XVIII provides that "[i]f *as a result of such inspection* [Flatley], in his sole discretion, for any reason, *determines that the condition of such properties or assets or the information contained in such records is unsatisfactory to [Flatley]*, then [Flatley] may terminate this Agreement ...." (emphasis supplied). Given that the more exact language in the termination provision could easily have been inserted in the amendment provision, we agree with the district court

that the different choice of language not only supports a board amendatory power for Flatley but that it also renders Article XVIII sufficiently ambiguous so as to justify the admission of extrinsic evidence.

Thus, because the "plain" meaning of Article XVIII arguably supports the reading offered by appellee Flatley, and because a "plain" meaning of Article XVIII is difficult if not impossible to find, we reject appellant GANCI's contention that the language of Article XVIII clearly runs in its favor and that the admission of extrinsic evidence to interpret that provision was error.

b. *Whether the extrinsic evidence supports the district court's finding of a broad amendatory power under Article XVIII*

█ GANCI here argues that the district court's finding of a broad amendatory power under Article XVIII was clearly erroneous since that finding is allegedly not supported by the extrinsic evidence received. This contention is without merit. Much of the evidence before the district court was uncontroverted on the issue of the parties' urgency in signing an agreement by midnight on September 28, 1984. The district court specifically found that the urgency was felt by both parties, and that parties facing such a deadline would most probably have intended to leave themselves flexibility in certain of the contract terms.

While we acknowledge appellant's point that some of the evidence (specifically, Salvadore's testimony) supports an intent on GANCI's part to enter a binding, inflexible contract on September 28, 1985 with narrow amendatory powers for Flatley, this intention was hotly in dispute and directly controverted by the testimony of Flatley's witnesses. The district court, by finding the parties' intent to be one of providing Flatley broad amendatory powers, thus rejected Salvadore's testimony and accepted that of the main Flatley witness, Charles Nichols. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly er-

roneous." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Therefore, we reject appellant's argument that the court's finding was error.

2. *Whether Flatley should be held in breach on the ground that it "prematurely" terminated the contract*

For purposes of this issue, GANCI concedes that the Second Restated Agreement may have been properly submitted by Flatley. However, GANCI argues that Flatley was nonetheless in breach because it terminated the agreement at *10:00 a.m.* on November 19, 1984, and thus deprived GANCI of the right to accept any amendments by *5:00 p.m.* that day, which was the deadline agreed upon by the parties.

We find no merit in appellant's claim for two reasons. First, the evidence is uncontroverted that GANCI gave no indication it would *ever* accept the Second Restated Agreement. Even if certain evidentiary inferences hint at a conflict, the district court found as fact that "the *defendant was never willing to accept this transaction* with such amended conditions as the plaintiff had legitimately imposed [in the Second Restated Agreement],...." (emphasis supplied). GANCI nowhere challenges this finding as clearly erroneous. Thus, for GANCI to assert that it needed only a few more hours to discard its meticulously prepared Third Restated Agreement in favor of Flatley's Second is, to say the least, a contention without merit.

█ Second, the agreement between the parties clearly provides that notice of termination must be made in writing. It is undisputed that, while Flatley *orally* indicated its intention to terminate at 10:00 a.m. on November 19, 1984, Flatley did not give the *written* notice required by the contract until November 20, 1984, which was outside the 5:00 p.m. November 19 deadline. Thus, because the evidence overwhelmingly supports the district court's finding that GANCI never intended to accept the Second Restated Agreement, and because Flatley's submission of the con-

tractually required written notice was not premature, we do not accept appellant's contention that Flatley's oral termination at 10:00 a.m. rendered the latter in breach.

### 3. Whether GANCI waived its right to raise an Article XVIII objection to the Second Restated Agreement [2]

 Waiver is the intentional relinquishment of a known right. *W. & H. Jewelry Co., Inc. v. Aetna Casualty & Surety Co.,* 141 F.Supp. 296, 300 (D.R.I.1956); *Violet v. Travelers Express Co.,* 502 A.2d 347, 349 (R.I.1985); *Haxton's of Riverside Inc. v. Windmill Realty Inc.,* 488 A.2d 723, 725 (R.I.1985); *see also* Restatement (Second) Contracts, § 84 (1981). GANCI's "right" under Article XVIII was to reject amendments that exceeded the scope of that provision. GANCI argues that this "right" could only be waived by its affirmative endorsement or acceptance of the amendments Flatley offered in the Second Restated Agreement. Thus, because it is undisputed that GANCI never accepted the Second Restated Agreement as a binding contract, GANCI argues that it never waived its right to raise an Article XVIII objection. For the reasons stated below, we disagree.

The Article XVIII objection raised by GANCI on appeal is twofold. First, GANCI argues that while the September 28 Agreement provided that $500,000 of the purchase price was to be secured and payable *with* interest, the Second Restated Agreement provides that the $500,000 is unsecured and payable *without* interest. This elimination of security and modification of the interest due on the $500,000, argues GANCI, constitutes a modification of the purchase price in direct violation of Article XVIII. Second, GANCI notes that the Second Restated Agreement provides that in the event GANCI exercises its option to have Flatley's promissory note secured by mortgage deeds and security agreements the minimum amount so secured shall be $11,000,000. GANCI points out that this $11 million "floor" (on the mortgage-secured note amount) effectively limits the up-front cash GANCI could receive to $2.75 million. Such a minimum cash payment, argues GANCI, restricts its right to freely determine the manner of payment and therefore violates the express mandate of Article XVIII.

The problem with GANCI's assertions is twofold. First, GANCI offered no evidence below that it raised these objections in the course of its negotiations with Flatley over the Second Restated Agreement. Second, the evidence is uncontroverted that GANCI *accepted,* in the course of negotiations below, the two provisions to which it now raises an Article XVIII objection.[3]

We are mindful that the burden fell on Flatley, not GANCI, to put forth evidence on the former's claim of waiver. Flatley

---

**2.** GANCI here does not challenge the district court's finding that GANCI waived any Article XVIII objection to the First Restated Agreement. Instead, GANCI asserts that the district court found no waiver as to the Second Restated Agreement, that no waiver in fact occurred, and that the district court erred in concluding that the terms of the Second Restated Agreement were "legitimately imposed." Because we find that GANCI waived any Article XVIII objection to the Second Restated Agreement, we do not here address the contention that the amendments therein were outside the scope of Article XVIII.

**3.** GANCI cites the district court as making a finding of fact that it *never* affirmatively assented to the amendments at issue on appeal. Specifically, the district court found that, apart from the provisions of the First Restated Agreement pertaining to supplies and inventory, *"the remaining amendments* which were proposed both by [the First Restated Agreement] and reiterated in substance in [the Second Restated Agreement] *were at no time acceptable to the defendant, ..."* (emphasis supplied). In the context of the district court's ruling from the bench, we understand this statement to mean only that GANCI never intended to accept the Second Restated Agreement as a binding contract, and not that GANCI objected to each item in the agreement. Most importantly, we do not read the cited language as a finding that GANCI communicated to Flatley, during the relevant time period, the two objections raised today. The evidence on that score was uncontroverted: GANCI not only never objected but assented both to no interest on the $500,000 as well as to the $11 million minimum mortgage-secured note amount.

did this, specifically through the testimony of Charles Nichols, who stated that GANCI never raised an objection under Article XVIII until a late-afternoon phone call on November 19, and that GANCI had assented both to the non-interest bearing status of the $500,000 as well as to the $11 million floor amount on a mortgage-secured note.

GANCI never rebutted this testimony. Any implication in the testimony of Guido Salvadore that he raised an Article XVIII objection prior to November 19 was soundly rejected by the district court, which held that it "specifically credits Mr. Nichols' testimony that no objection was raised as to the scope of the restated agreement subsequent to Exhibit 1 exceeding that permitted under Article 18 of Exhibit 1 at any time prior to the ultimate November [19th] telephone call."

It is not clear to us that GANCI raised before the district court the Article XVIII objections now being made before us. It is clear, however, that GANCI never introduced any evidence that the November 19 telephone call was made prior to 5:00 p.m. and that GANCI had at that or any other time raised the two Article XVIII objections at issue on appeal. Salvadore, in testifying regarding the content of the November 19 conversation, stated merely that "I told [Nichols] that they were in violation of the agreement of September 28th and that they had no right to terminate." As noted previously, the evidence was uncontroverted that GANCI *accepted* the two amendments at issue, and to overcome or retract such a prior manifestation of assent, GANCI was obligated to do more than raise the amorphous eleventh hour objection that it did. Accordingly, given that GANCI offered no evidence to refute the assertions of Nichols that GANCI had assented to the provisions at issue today, and even accepting Salvadore's testimony regarding the November 19 phone call as true, the content of the phone call did not in our view suffice to retract GANCI's prior, and undisputed, manifestation of assent.

Three salient points, then, emerge on the issue of waiver. First, the district court found as fact that GANCI never raised an Article XVIII objection prior to late afternoon on November 19. Second, the evidence is uncontroverted that, as to the two specific Article XVIII objections noted in GANCI's appellate brief, GANCI never raised these, or even intimated that they existed, during the November 19 phone call or at any point prior (i.e., during the relevant time period in which GANCI could make objections below). Third, the evidence is not only uncontroverted that GANCI remained silent, but it is undisputed that GANCI approved, in the course of negotiations below, the provisions that allegedly shock it so now. Thus, GANCI's argument—that it did not waive an Article XVIII objection because it did not approve the Second Restated Agreement as a binding contract—completely obfuscates the limited nature of its Article XVIII objections and the undisputed testimony that GANCI's assent to these provisions was never retracted. Accordingly, that the amendments GANCI objects to may violate the clear mandate of Article XVIII is irrelevant, for we conclude that, as to these amendments, the undisputed facts establish a waiver by GANCI of its Article XVIII right to object.

For the foregoing reasons, the judgment of the district court is *affirmed*.